892 So.2d 837 (2005)
Edward C. DUNSTON and Constance Y. Dunston, Appellants,
v.
The MISSISSIPPI DEPARTMENT OF MARINE RESOURCES, Mississippi Commission on Marine Resources and Stephen Oivanki, Appellees.
No. 2003-CA-01332-COA.
Court of Appeals of Mississippi.
January 18, 2005.
*839 John G. Corlew, Jackson, attorney for appellant.
Joni Reagan McGehee, William E. Whitfield, Gulfport, attorneys for appellee.
Before KING, C.J., CHANDLER and ISHEE, JJ.
KING, C.J., for the Court.
¶ 1. Aggrieved by the trial court's grant of summary judgment, the Dunstons appeal and assert the following assignments of error, which we quote verbatim:
I. The Circuit Court Applied an Erroneous "Preponderance of the Evidence" Standard in Granting Summary Judgment to the Defendants; the Court Did Not View the Evidence in the Light Most Favorable to the Appellants as Required by Law; the Appellants Have Demonstrated Facts Sufficient to Support Their Claims.
II. The Actions of the Head of the Office of Coastal Ecology, Department of Marine Resources, Which Handles Permitting for All DMR Regulation on the Mississippi Gulf Coast in Stating Unequivocally to the Buyer in an Executed Buy/sell Agreement That the Property Subject to the Buy/sell Agreement Was Included in the Property He Was Putting Together to Create a Marshland reserve and That "He Would Fight until the End to Prevent Any Development" of the Property Subject to the Buy/sell Agreement, Resulting in Buyer's Failure to Purchase the Subject Property, Constituted Tortious Interference with the Seller's Business Relations and Contract with Buyer.
III. The Actions of the Head of the Office of Coastal Ecology, Department of Marine Resources, Which Handles Permitting for All DMR Regulation on the Mississippi Gulf Coast in Stating Unequivocally to the Buyer in an Executed Buy/sell Agreement That the Property Subject to the Buy/sell Agreement Was Included in Property He Was Putting Together to Create a Marshland Reserve and That "He Would Fight until the End to Prevent Any Development" of the Property Subject to the Buy/sell Agreement, Resulting in Buyer's Failure to Purchase the Subject Property, Were Taken under the Color of State Law; and Treated Seller Differently from Other Property Owners in the Area in Violation of 42 U.S.C. § 1983.
IV. The Actions of the Head of the Office of Coastal Ecology, Department of Marine Resources, Which Handles Permitting for All DMR Regulation on the Mississippi Gulf Coast in Stating Unequivocally to the Buyer in an Executed Buy/sell Agreement That the Property Subject to the Buy/sell Agreement Was Included in Property He Was Putting Together to Create a Marshland Reserve and That "He Would Fight until the End to Prevent Any Development" of the Property Subject to the Buy/sell Agreement, Resulting in Buyer's Failure to Purchase the Subject Property, and Other Actions of the Department of Marine Resources in Asserting Control and Ownership *840 of Seller's Property Have Resulted in a Taking of Seller's Property for a Public Use Without Payment of Due Compensation in Violation of Mississippi Constitution § 17.

STATEMENT OF FACTS
¶ 2. Edward and Constance Dunston own approximately 85 acres of property situated in Jackson County on the Mississippi Gulf Coast. The Dunstons purchased the property around 1971-1972, and since that time they have sold eight lots from the property. On June 17, 1999, the Dunstons executed an agreement with Oceana Design and Development Corporation which gave Oceana the right to purchase the remainder of the property until December 17, 1999 for $750,000. The purpose of the agreement was to allow David Maizell, Oceana's president, to "explore the prerequisites, opportunities, and options to develop the property to its best use ...". The agreement allowed Oceana to choose to purchase the property with or without approval from Jackson County, or to cancel the contract and yield all deposits, with no further obligation to the seller. The agreement further stated that its intent was to "secure the price and time period defined above for the Buyer to evaluate development opportunity/limitations of the subject property."
¶ 3. The Dunston property is located in the Graveline Bay Coastal Preserve. Along with the Graveline Bay Preserve, nineteen other sites along the Mississippi Coast were designated by the coastal zone program, pursuant to a national program, as areas of pristine coastal marsh the state would like to purchase and bring to state ownership for preservation. The Graveline Bay Preserve contains approximately 2,339 acres, 614 of which the state had acquired and was currently managing.
¶ 4. The Dunston Property was also subject to the provisions of the Wetlands Protection Act of 1973 implemented through the Department of Marine Resources (DMR). Under the Act, wetlands can not be developed without first securing a permit issued by the DMR. Maizell was aware that the Dunston property contained wetlands, and in light of this fact he contacted several agencies, such as the Jackson County Planning Commission, United States Corp of Engineers, United States Fish and Wildlife Service, and the Mississippi Department of Environmental Quality, to discuss the possibility of getting a permit to develop the Dunston property, and he received positive responses from these agencies. Maizell then met with Stephen Oivanki, head of the Office of Coastal Ecology which handled all DMR permitting on the Mississippi Gulf Coast. Maizell claims that Oivanki advised him that the property was "100% wetlands" and stated "he would fight until the end to prevent any development" of the property. Following this conversation with Oivanki, Maizell refused to purchase the property for Oceana.
¶ 5. On December 5, 2000, the Dunstons filed a complaint under the Mississippi Tort Claims Act in the Circuit Court of Harrison County against the DMR, the Mississippi Commission of Marine Resources, and their employee Stephen Oivanki. The Dunstons alleged tortious interference with a contract, and a business relationship, a violation of Mississippi Constitution § 17, and a violation of 42 U.S.C. § 1983. The Dunstons requested injunctive relief, actual damages, and punitive damages.
¶ 6. On May 1, 2003, the trial judge issued findings of fact and conclusions of law and granted summary judgment in favor of the defendants finding that the *841 Dunstons had failed to establish a genuine issue of material fact.
¶ 7. Finding no error we affirm.

ISSUES AND ANALYSIS
¶ 8. We have combined the Dunstons issues into a single issue.

I.

The Circuit Court erred in granting summary judgment in favor of the defendants.
¶ 9. The Dunstons contend that the trial judge erred in granting summary judgment based on affidavit testimony regarding a DMR memorandum from 1978. The memorandum indicated Mr. Dunston knew his property could not be developed. The Dunstons contend that the trial judge erroneously concluded there was no genuine issue of material fact using an improper "preponderance of the evidence" standard. The Dunstons argue that trial judge did not comply with Mississippi Rules of Civil Procedure Rule 56 by viewing these memoranda in the light most unfavorable to them, and ignoring Mr. Dunston's affidavit testimony that refuted these memoranda, and created a genuine issue of material fact precluding summary judgment.
¶ 10. The Dunstons maintain a host of injuries resultant from the statements Stephen Oivanki made to David Maizell when Maizell inquired about their property. First, they argue that Oivanki's statements to Maizell resulted in his failure to purchase their property which constituted tortious interference with a contract, and a business relation. Secondly, they allege that the statements Oivanki made to Maizell were made under the color of state law and treated the Dunstons differently than other property owners in violation of 42 U.S.C. § 1983. Finally, the Dunstons allege that the statements made by Oivanki and "other actions of the Department of Marine Resources" have resulted in a taking of their property for public use without due compensation in violation of Mississippi Constitution § 17.
¶ 11. "This Court applies a de novo standard of review of a lower court's grant or denial of summary judgment." Lewallen v. Slawson, 822 So.2d 236, 237(¶ 6) (Miss.2002). In reviewing the grant or denial of summary judgment the appellate court applies the same standard as that of the trial court under Rule 56(c) of the Mississippi Rules of Civil Procedure. Id. at 238. Rule 56(c) states that summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact....". Id. The burden of proof is on the moving party to demonstrate that no genuine issue of material fact exists. Id."The presence of fact issues in the record does not per se entitle a party to avoid summary judgment." Id."The court must be convinced that the factual issue is a material one, one that matters in an outcome determinative sense.... [T]he existence of a hundred contested issues of fact will not thwart summary judgment where there is no genuine dispute regarding the material issues of fact." Id.
¶ 12. This case was properly brought under the Mississippi Tort Claims Act (MTCA), codified in Mississippi Code Annotated Section 11-46-1-23 (Rev.2002), which provides immunity to governmental entities in specified circumstances. The MTCA provides that governmental employees are not personally liable for certain acts or omissions occurring within the course and scope of the employee's duties unless the employee engaged in conduct consisting of "fraud, malice, libel, slander, defamation, or any other criminal offense." *842 See Miss.Code Ann. § 11-46-9 (Rev.2002); Miss.Code Ann. § 11-46-7(2) (Rev.2002).
¶ 13. The Dunstons' brief specifically states "[a]ppellants' Complaint is clearly because of the acts of their employee, the head of the Office of Coastal Ecology, committed during the course and scope of his employment." The Dunstons contend Oivanki intentionally made statements to Maizell that caused him to refuse to purchase the Dunstons' property which constituted tortious interference with contract and business relations. Although the Dunstons allege "intentional" behavior on the part of Oivanki they do not present any evidence that Oivanki was engaged in conduct which constituted "fraud, malice, libel, slander, defamation, or any criminal offense" thereby penetrating his cloak of sovereign immunity under Mississippi Code Annotated Section 11-46-7(2).[1] Nor do the Dunstons allege that they ever submitted and were subsequently denied a permit by the Mississippi Department of Marine Resources, or the Mississippi Commission on Marine Resources. The agencies had no involvement in this matter, and therefore there is no liability. If the agencies had denied the Dunstons a permit to develop their property they, as well as Oivanki, would be immune from suit pursuant to Mississippi Code Annotated Section 11-46-9(h) (Rev.2002)[2]. Absent evidence showing otherwise, Oivanki, the Mississippi Department of Marine Resources, and the Mississippi Commission on Marine Resources are immune to claims of tortious interference with contract and business relations. There is no merit to this issue.
¶ 14. Next, we look at the Dunston's 42 U.S.C. § 1983 claim. Section 1983 provides that:
Every person who, under the color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party *843 injured in an action at law, suit in equity, or other proper proceeding for redress. For the purposes of this section any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.
42 U.S.C. § 1983.
Neither the state nor its officials acting in their official capacities are "persons" under § 1983, and therefore can not be held liable for a federal civil rights claim. Will v. Michigan Dept. of State Police, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989). After a review of the complaint and the record we find it sufficient under the rules of notice pleading that which this state adheres. Oivanki was sued in his official capacity as an employee of the DMR and CMR, and not in his individual capacity. Therefore the state, as well as Oivanki in his official capacity, are immune from liability under a § 1983 claim. There is no merit to this issue.
¶ 15. Finally, we look to the Dunston's claim of a taking of their property in violation of Mississippi Constitution § 17. The Dunstons allege the following acts by the DMR constitute a taking of their property without just compensation: (1) inclusion of their property in the Graveline Bay Marshland reserve, (2) stonewalling any possible development to the property, (3) depositing dredge spoils, (4) placing a jetty on the property, and (4) the statements Oivanki made to Maizell. The Dunstons also claim that the trial court erred in holding that this claim should have been brought in Jackson County, the situs of the property. The Dunstons counter that Harrison County was the proper venue since this action was brought under the MTCA which states:
(2) The venue for any suit filed under the provisions of this chapter against the state or its employees shall be in the county in which the act, omission or event on which the liability phase of the action is based, occurred or took place. The venue for all other suits filed under the provisions of this chapter shall be in the county or judicial district thereof in which the principal offices of the governing body of the political subdivision are located. The venue specified in this subsection shall control in all actions filed against governmental entities, notwithstanding that other defendants which are not governmental entities may be joined in the suit, and notwithstanding the provisions of any other venue statute that otherwise would apply.
Miss.Code Ann. § 11-46-13(2).
¶ 16. This Court declines to address this issue. The Dunstons never filed for, and subsequently were never denied, a permit to develop their property. Since the Dunstons have not exhausted all administrative remedies available to them this Court does not have jurisdiction to hear this claim, as it is unripe for judicial review. See Everitt v. Lovitt, 192 So.2d 422, 428 (Miss.1966). Since the Dunstons' claims under the MTCA have been disposed of, their claim of a taking must be brought as a separate action with venue fixed in the Circuit Court of Jackson County, the situs of the property. See Miss.Code Ann. § 11-27-5 (Rev.2004).
¶ 17. Considering the evidence de novo, we find that the trial judge did not abuse his discretion in granting summary judgment since the Dunstons' state tort claims were protected by sovereign immunity. Furthermore, as to the Dunstons federal claims, the trial judge properly concluded that Oivanki was sued in his official capacity, and as the State is not a person it can not be liable for a claim brought under 42 U.S.C § 1983. Finally, summary judgment was proper because the Dunston's *844 claim of inverse condemnation is not ripe for judicial review.
¶ 18. THE JUDGMENT OF THE CIRCUIT COURT OF HARRISON COUNTY SECOND JUDICIAL DISTRICT GRANTING SUMMARY JUDGMENT IN FAVOR OF THE DEFENDANTS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANTS.
BRIDGES AND LEE, P.JJ., IRVING, MYERS, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR.
NOTES
[1] Miss.Code Ann. § 11-46-7. Exclusiveness of remedy; joinder of government employee; immunity for acts or omissions occurring within course and scope of employee's duties; provision of defense for and payment of judgments or settlements of claims against employees; contribution or indemnification by employee: (2) An employee may be joined in an action against a governmental entity in a representative capacity if the act or omission complained of is one for which the governmental entity may be liable, but no employee shall be held personally liable for acts or omissions occurring within the course and scope of the employee's duties. For the purposes of this chapter an employee shall not be considered as acting within the course and scope of his employment and a governmental entity shall not be liable or be considered to have waived immunity for conduct of its employee if the employee's conduct constituted fraud, malice, libel, slander, defamation, or any criminal offense.
[2] Miss.Code Ann. § 11-46-9(h). Exemptions of governmental entity from liability on claims based on specified circumstances: (1) A governmental entity and its employees acting within the course and scope of their employment or duties shall not be liable for any claim; (h) Arising out of the issuance, denial, suspension or revocation of, or the failure or refusal to issue, deny, suspend or revoke any privilege, ticket, pass, permit, license, certificate, approval, order or similar authorization where the governmental entity or its employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked unless such issuance, denial, suspension or revocation, or failure or refusal thereof, is of a malicious or arbitrary and capricious nature.