LEE, C.J.,
for the Court:
PROCEDURAL HISTORY
¶ 1. REGA Pipeline LLC[1] (REGA) filed a complaint in the Smith County Circuit Court against Midcontinent Express Pipeline LLC (MEP), Bryan Gable, Smith County Lime Plant LLC, and Blue Diamond Minerals Inc. REGA’s specific claims against MEP included breach of contract, intentional breach of contract, breach of the implied covenant of good faith and fair dealing, negligent and intentional interference with a contract, and defamation.
¶ 2. MEP subsequently filed motions to sever the claims and for a change in venue. The Smith County Circuit Court granted MEP’s motions, finding that the claims against the other defendants were unrelated to those claims against MEP. The court severed the claims against MEP and transferred these claims to the Clarke County Circuit Court.
¶ 3. In May 2011, MEP filed a motion for summary judgment, which was granted. REGA now appeals, asserting that the Smith County Circuit Court abused its discretion in transferring venue to Clarke County and that the Clarke County Circuit Court erred in granting summary judgment to MEP on REGA’s claims based on *1100 breach of contract, intentional interference with a contract, and quantum meruit.
FACTS
If 4. In 2009, MEP began construction on a natural-gas pipeline to begin in Oklahoma and end in Alabama. MEP contracted with numerous general contractors for the construction of specified lengths of the pipeline, called “Spreads.” Henkels and McCoy Inc. (Henkels) was hired to construct a portion of the pipeline, part of which ran through Clarke County. Henk-els hired REGA as a subcontractor for the first stages of construction to clear the right-of-way for its portion, identified as Spread 10. REGA contends that it had an oral agreement with MEP to perform additional work on the pipeline not included in Spread 10, and that it made preparations to handle the additional work.
¶ 5. The contract between Henkels and REGA provided for the clearing of 340,560 linear feet of the right-of-way beginning March 7, 2009, and to be completed by May 14, 2009. Although there was no written contract between MEP and REGA, the contract between MEP and Henkels stated that any subcontractor hired by Henkels was subject to approval by MEP. However, the contract between MEP and Henkels further stated that MEP’s review of any subcontractor did not constitute an employer-employee relationship between MEP and such a subcontractor, nor did MEP retain any control over the actions, work, or payment of the subcontractor. The subcontract between Henkels and REGA and the contract between Henkels and MEP specified that time was of the essence. Both the contract between MEP and Henkels and the contract between Henkels and REGA stated they contained the entire agreement between the parties and superseded any prior oral or written understandings of any kind between the parties.
¶ 6. After eleven days, REGA had cleared less than 10,000 linear feet. On March 18, 2009, Henkels notified REGA that it needed to clear 5,800 linear feet per day in order to complete the project on schedule, and that it needed to clear 29,000 linear feet by March 20 in order to stay on schedule. REGA was ultimately terminated by Henkels for failing to remedy its performance defects. REGA claimed that it was terminated for failing to pay approximately $80,000 in kickbacks to Henkels. REGA further contended it was unjustly terminated for certain environmental violations that were manufactured by MEP solely for the purpose of terminating REGA’s contract with Henkels.
STANDARD OF REVIEW
¶ 7. In reviewing a trial court’s grant of summary judgment, this Court employs a de novo standard of review. Anglado v. Leaf River Forest Prods., Inc., 716 So.2d 543, 547 (¶ 13) (Miss.1998). Summary judgment “shall be rendered ... if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.” M.R.C.P. 56(c). This Court will consider all of the evidence before the trial court in the light most favorable to the nonmoving party. Palmer v. Anderson Infirmary Benevolent Ass’n, 656 So.2d 790, 794 (Miss.1995). The party opposing the motion “may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial.” M.R.C.P. 56(e).
*1101 DISCUSSION
I. VENUE
¶8. In its first issue on appeal, REGA argues the Smith County Circuit Court abused its discretion in transferring the case to Clarke County. Specifically, REGA contends the Smith County Circuit Court should have allowed REGA to choose the forum. The standard of review for a transfer of venue is abuse of discretion. Laurel Ford Lincoln-Mercury, Inc. v. Blakeney, 81 So.3d 1123, 1125 (¶ 5) (Miss.2012). After severing the claims against MEP, the trial court determined that, pursuant to Mississippi Code Annotated section 11-11-3 (Rev.2004) and considering “judicial economy and efficiency,” venue should be transferred to Clarke County. REGA then filed a motion for relief pursuant to Mississippi Rule of Civil Procedure 60(b)(6) asking the trial court to reconsider. This motion was filed on November 5, 2010, approximately one month after the order transferring venue was entered.[2] The trial court denied REGA’s motion.
¶ 9. Section ll-ll-3(l)(a)(i) states:
Civil actions of which the circuit court has original jurisdiction shall be commenced in the county where the defendant resides, or, if a corporation, in the county of its principal place of business, or in the county where a substantial alleged act or omission occurred or where a substantial event that caused the injury occurred.
MEP was a nonresident defendant; thus, venue was appropriate in Clarke County because the “substantial alleged act” or “substantial event” causing the injury occurred there. We find no abuse of discretion by the trial court in transferring venue to Clarke County. We further note that REGA sought a scheduling order and a trial setting in Clarke County. See Fredericks v. Malouf, 82 So.3d 579, 582 (¶ 16) (Miss.2012) (“Venue is an affirmative right that generally may be waived or abandoned.”). This issue is without merit.
II. BREACH-OF-CONTRACT CLAIM
¶ 10. In its second issue on appeal, REGA contends the trial court erred in granting MEP’s motion for summary judgment. Specifically, REGA contends it had an oral contract with MEP to perform all of the right-of-way clearing in Mississippi, not just Spread 10. MEP denies the existence of any oral contract with REGA. The existence of an oral contract is a fact issue. Putt v. City of Corinth, 579 So.2d 534, 538 (Miss.1991). “The formation of a contract, either oral or written, requires (1) an offer, (2) acceptance of the offer, and (3) consideration.” Scott v. Magnolia Lady, Inc., 843 So.2d 94, 96 (¶ 9) (Miss.Ct.App.2003).
¶ 11. The trial court did not find any specific terms of an agreement between REGA and MEP; thus, the essential elements of an oral contract were not met. According to Billy Brown, a REGA employee who was deposed pursuant to Mississippi Rule of Civil Procedure 30(b)(6), Dennis Egger of MEP discussed future business between the two companies. Brown admitted that their discussions “never did reach negotiation stage” and that material terms still needed to be negotiated. Brown also answered affirmatively when asked if Egger was “promising” REGA a contract. Richard Reeves, an owner of REGA, stated he met once with Egger in a parking lot to discuss *1102 REGA doing work for MEP. It is unclear from Reeves’s deposition as to what exactly Egger promised REGA. In his deposition, Egger stated he did not promise to give REGA work; he only stated that he would put REGA in touch with the spread contractors. Egger said he ultimately did facilitate a meeting between Henkels and REGA, which led to Henkels hiring REGA. Egger also stated REGA understood it was too small of a company to be considered a spread contractor.
¶ 12. The evidence submitted to the trial court does not support the formation of an oral contract; rather, the evidence shows at most the intention of MEP and REGA to enter into a future contract. “[M]ere agreements to agree are unenforceable.” Denbury Onshore, LLC v. Precision Welding, Inc., 98 So.3d 449, 453 (¶ 14) (Miss.2012). We agree with the trial court and find no contract was formed between the parties. This issue is without merit.
III. INTENTIONAL INTERFERENCE WITH A CONTRACT
¶ 13. REGA contends MEP intentionally interfered with its contract with Henkels for several reasons: REGA refused to pay $80,000 in kickbacks to Henk-els; REGA was terminated due to its noncompliance with environmental regulations and not for its failure to clear a certain number of linear feet; and MEP changed a wetland sign in order to find REGA in violation of the environmental regulations. “An action for [intentional] interference with [a] contract ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party.” Hollywood Cemetery Ass’n v. Bd. of Mayor & Selectmen of McComb City, 760 So.2d 715, 719 (¶ 15) (Miss.2000) (citation omitted). To prevail on an intentional-interference-with-a-contract claim, REGA must prove the following:
(1) that the acts were intentional and willful; (2) that they were calculated to cause damage to the plaintiff in his/her lawful business; (3) that they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which acts constitute malice); and (4) that actual damage or loss resulted.
Scruggs, Millette, Bozeman & Dent, P.A. v. Merkel & Cocke, P.A., 910 So.2d 1093, 1098 (¶ 23) (Miss.2005) (citation omitted). REGA must also “prove that the contract would have been performed but for the alleged interference.” Par Indus., Inc. v. Target Container Co., 708 So.2d 44, 48 (¶ 8) (Miss.1998).
¶ 14. Since REGA never contends that MEP was involved in the purported kickback scheme with Henkels, we fail to see how this supports REGA’s claim for intentional interference with a contract.
¶ 15. To support its argument concerning MEP changing a wetland sign, REGA submitted a deposition from Sam Clark, a former employee of Henkels, and an affidavit from Fred Phillips, a former employee of Henkels and REGA. The trial court found Phillips’s affidavit to be insufficient since it “contains no indication of personal knowledge, and simply makes broad con-clusory allegations unsupported by specific facts.” Under Mississippi Rule of Civil Procedure 56(e), “supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matter stated therein.” “A conclusory, self-serving affidavit, unsupported by material facts relevant to the proposition at issue, is insufficient as a basis to grant summary judgment.” Dal *1103 ton v. Cellular S., Inc., 20 So.3d 1227, 1238-34 (¶ 14) (Miss.2009). Phillips’s affidavit makes broad conclusory allegations, such as “REGA was wrongfully delayed by MEP [i]nspectors on several occasions” or “MEP and Nick Walters of Henkels & McCoy acted together to terminate [REGA] because of [REGA’s] refusal to pay kickbacks.” Phillips does state that MEP changed a wetland sign with a magic marker. However, Phillips does not state that any of this information is based on his first-hand knowledge.
¶ 16. In his deposition, of which only certain pages are included in the record, Clark stated he was in the Henkels office when he overheard Jerry Vickery, Gary Zak, Bobby Kerbo, and Nick Walters discussing changing wetland signs on the project site to get REGA terminated. Clark called Vickery, Zak, and Kerbo “MEP representatives,” but in reality these men were inspectors working for Mustang Engineering (Mustang). Clark did acknowledge that these three men worked for Mustang and Walters worked for Henkels. Clark admittedly had no personal knowledge of anyone changing the wetland sign; he only heard it had happened. MEP submitted the affidavit of Kevin Dahncke, who was vice president of construction for Kinder Morgan and was directly responsible for the construction and installation of the pipeline. Kinder Morgan was one of the owners of MEP. Dahncke investigated REGA’s claims that Vickery, Zak, and Kerbo were MEP representatives. Dahncke determined that the three men worked for Mustang, and any environmental inspectors during construction of the pipeline were independent contractors.
¶ 17. Upon reviewing the record de novo, we find REGA has failed to prove the existence of a genuine issue of fact that MEP maliciously interfered with the contract between REGA and Henkels. All of REGA’s evidence, much of which consists of hearsay and is not based on personal knowledge, points toward bad behavior by Henkels, whom REGA has not filed suit against. We find this issue to be without merit.
IV. QUANTUM MERUIT
¶ 18. In its last issue, REGA contends the trial court erred in granting summary judgment to MEP on its quantum meruit claim.[3] REGA claims it purchased equipment and hired staff in anticipation of the MEP project, but was never paid since MEP failed to deliver on its promise. Recovery under quantum meruit “may be premised either on express or ‘implied’ contract, and a prerequisite to establishing grounds for quantum meruit recovery is [the] claimant’s reasonable expectation of compensation.” Tupelo Redevelopment Agency v. Gray Corp., 972 So.2d 495, 514 (¶ 56) (Miss.2007) (quoting In re Estate of Fitzner, 881 So.2d 164, 173 (¶ 25) (Miss.2003)). The essential elements of recovery under a quantum meruit claim are:
(1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged, [and] used and enjoyed by him; and (4) under such circumstances as reasonably notified [the] person sought to be charged that [the] plaintiff, in performing such services, was expected to be paid by [the] person sought to be charged.
Fitzner, 881 So.2d at 173-74 (citations omitted).
*1104 ¶ 19. REGA’s quantum meruit claim fails for several reasons. Since there was no contract with MEP, express or implied, we cannot find REGA had a “reasonable expectation of compensation.” Most importantly, REGA does not contend that any valuable services were actually rendered or furnished to MEP. In fact, Lauren Drummond, who owned fifty-one percent of REGA, testified all of the equipment it purchased and the personnel it hired were used on other projects, including its contract with Henkels. This issue is without merit.
¶ 20. THE JUDGMENT OF THE CLARKE COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, ROBERTS, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR.

. Other plaintiffs included Richard Reeves; Lauren Drummond; REGA Inc.; and Meridian Home Center Inc. Reeves and Drummond had formed REGA Inc., which in turn owned REGA Pipeline. Reeves and Drummond also operated Meridian Home Center.

. REGA should have filed a motion for reconsideration of the transfer order under Rule 60(c) rather than a Rule 60(b)(6) motion. However, motions filed pursuant to Rule 60(c) are required to be filed within ten days after the entry of the transfer order.

. The trial court also granted summary judgment to MEP on REGA’s unjust-enrichment claim. REGA did not raise this as an issue on appeal.