# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01190-COA

EDWARD SPRINGER                                          APPELLANT

v.

AUSBERN CONSTRUCTION CO., INC.                          APPELLEE

DATE OF JUDGMENT:              05/08/2014
TRIAL JUDGE:                   HON. ANDREW K. HOWORTH
COURT FROM WHICH APPEALED:     CHICKASAW COUNTY CIRCUIT COURT,
                               FIRST JUDICIAL DISTRICT
ATTORNEYS FOR APPELLANT:       REX F. SANDERSON
                               BARRETT JEROME CLISBY
ATTORNEYS FOR APPELLEE:        MARK D. HERBERT
                               SABRINA BOSARGE RUFFIN
                               BRADFORD COLEMAN RAY
NATURE OF THE CASE:            CIVIL - TORTS - OTHER THAN PERSONAL
                               INJURY AND PROPERTY DAMAGE
TRIAL COURT DISPOSITION:       JUDGEMENT RENDERED IN FAVOR OF
                               APPELLEE FOR $182,500
DISPOSITION:                   REVERSED AND RENDERED - 08/02/2016
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., BARNES AND GREENLEE, JJ.**

**GREENLEE, J., FOR THE COURT:**

¶1.    A Lafayette County jury awarded Ausbern Construction Company Inc. a judgment of $182,500 against county engineer Edward Springer for tortious interference with a road-construction contract. Springer appeals. We find that Springer acted within the scope of his responsibility to the County and without bad faith. Because his actions were not "without right or justifiable cause," the element of tortious interference that constitutes malice was not

satisfied. We also find that the claim against Springer implicates the Mississippi Tort Claims Act, and that Springer's motion to dismiss due to lack of pre-suit notice should have been granted. We therefore reverse and render the verdict against Springer.

## FACTS AND PROCEEDINGS BELOW

¶2.     Ausbern won a contract bid with Chickasaw County for construction of a road. Ausbern's bid was based on unit specifications prepared by the office of Chickasaw County's engineer, Springer. Springer's original plans estimated that 7,689 cubic yards of 304A fill material would be required. This estimate turned out to be an error, and the project actually required 17,700 cubic yards of the unit material.

¶3.     The project was subject to oversight from the Mississippi Office of State Aid. State Aid projects are subject to the regulations found in the "Mississippi Standard Specifications for State Aid Road and Bridge Construction" (the Green Book). Under the Green Book, the local county engineer is responsible for inspecting the contractor's work, measuring and keeping track of the actual unit quantities placed by the contractor, preparing monthly estimates of the work actually performed by the contractor, and reporting that quantity and corresponding earned contract amounts to both the State Aid Division and the County.[1]

¶4.     Section 105.17 of the Green Book provides a mechanism for a contractor to make a claim for adjustments from the original contract. It specifies that it "is in the public interest that the Board and the State Aid Engineer have early or prior knowledge of an existing or impending claim of any nature by the Contractor," that "the Contractor shall notify the

---

[1] A representative of Springer was present at the job site during construction.

2

Engineer in writing of an intention to make such claim for additional compensation before beginning the work on which the Contractor bases the claim or for such extension of time as soon as the facts first become known on which the Contractor bases the claim for adjustment," that "the Contractor hereby agrees that failure to provide written notice has denied the Board and the State Aid Engineer the prerogative of verifying additional time, materials, equipment, labor and making adjustment in the work which might remove or mitigate the conditions for which a claim might be made," and that "the Contractor further agrees that such failure on the Contractor's part shall be a conclusive waiver of any claim, or part thereof."

¶5.     Ausbern did not give notice to the State Aid Office or to the county engineer, Springer, that the project required almost three times as much fill material as the contract called for until after the project was completed in November 2011. Ausbern sent Springer emails November 23, 2011, December 2, 2011, and December 22, 2011, informing him that the amount of 304A the project required was significantly more than the original estimates and asking how the overage would be addressed.[2] Ausbern then contacted Joel Bridges, the district engineer with the State Aid Division. Bridges forwarded Ausbern's letter to Springer.

¶6.     In January 2012, Ausbern filed a formal claim for payment for the overage with the State Aid Office under Green Book section 105.17. State Aid Division engineer Joel Bridges approved this claim in February 2012, finding that Springer's original plans were in error and informing Chickasaw County and Springer that the Ausbern contract should be adjusted to

---

[2] Springer did not reply to those emails.

3

show 17,700 cubic yards of 304A and that Ausbern would be paid at the contract rate of $19.50 per cubic yard. Bridges also informed the Board of Supervisors in person that the claim had been approved. The County delayed payment pending approval from Springer.[3]

¶7.     In February 2012, Springer sent a letter to Ausbern acknowledging the error and offering that Ausbern should accept $8.00 a cubic yard for the overage rather than the contract unit price of $19.50. Ausburn declined to negotiate the unit price and in March 2012 sued Chickasaw County for breach of contract. Ausbern later joined Springer to the action, suing him individually for tortious interference with the contract due to his delay in addressing the overage and his failure to submit approval of an amended contract to the County.[4] Ausbern did not provide pre-suit notice pursuant to the Mississippi Tort Claims Act.

¶8.     The court granted a directed verdict to Ausbern against the County on its liability for breach of contract. The court rejected the County's argument that Ausbern had waived its right to be paid for the overage by failing to comply exactly with any notice requirements of Green Book section 105.17, stating: "I don't think that the failure to comply with the notice provisions excuses performance on the part of the county." The jury awarded Ausbern a judgment against the County for $387,793.50. That verdict was not appealed.

¶9.     The trial court denied Springer's pretrial and posttrial motions asserting that the tortious-interference claim against him implicated the Mississippi Tort Claims Act and that

---

[3] The wife of the owner of Ausbern was the attorney for the Board of Supervisors. She recused herself from matters dealing with this contract.

[4] The court granted Ausbern's motion to transfer venue. The trial took place before a Lafayette County jury.

4

the suit against him should be dismissed due to lack of pre-suit notice. The jury awarded Ausbern a judgment of $182,500 against Springer for tortious interference, including damages associated with lost bonding capacity due to outstanding accounts receivable.

¶10.   Springer appeals.

## DISCUSSION

¶11.   We review a trial court's grant or denial of a motion for a new trial for abuse of discretion. *Barriffe v. Estate of Nelson*, 153 So. 3d 613, 618 (¶22) (Miss. 2014). Questions of law are reviewed de novo. *Id*. at (¶26).

### I.       Whether Ausbern proved the elements of tortious interference.

¶12.   Springer argues that Ausbern failed to prove the element of tortious interference with a contract that implicates malice. Recovery for tortious interference is permissible where a plaintiff proves (1) the acts were intentional and willful; (2) they were calculated to cause damage to the plaintiff in his lawful business; (3) they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant, which acts constitute malice; and (4) actual damage or loss resulted. *Reeves v. Midcontinent Exp. Pipeline LLC*, 119 So. 3d 1097, 1102 (¶13) (Miss. Ct. App. 2013). "In this context, 'malicious' is defined as the intentional doing of a harmful act without legal or sound justification or excuse, in other words, the willful violation of a known right." *Collins v. Collins*, 625 So. 2d 786, 790 (Miss. 1993). "An action for interference with the contract ordinarily lies when a party maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other contracting party."

5

*Nichols v. Tri-State Brick & Tile Co.*, 608 So. 2d 324, 328 (Miss. 1992).

¶13.    An individual has been held as privileged to interfere with a contract when the defendant occupies a position of responsibility on behalf of another and interferes within the scope of that responsibility and without bad faith. *Shaw v. Burchfield*, 481 So. 2d 247, 254-55 (Miss. 1985) (defendant insurance agents had responsibilities related to the plaintiff's terminated at-will employment contract); *see also Vestal v. Oden*, 500 So. 2d 954, 955 (Miss. 1986) ("[O]ne occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." (citing Restatement (Second) of Torts § 770 comment b, illustration 3 (1979))).

¶14.    This Court found in *Morrison v. Mississippi Enterprise for Technology*, 798 So. 2d 567, 575 (¶28) (Miss. Ct. App. 2001), that this "'privilege' is merely a specific example of having 'right or justifiable cause' to interfere with the [contractual] relationship." "A person occupying a position of responsibility on behalf of another is 'privileged,' which is another word for having a right." *Id*. at (¶29). To satisfy this element of tortious interference when an individual is acting within the scope of responsibility on behalf of another, the plaintiff must present evidence of bad faith. *Jones v. Mullen*, 100 So. 3d 490, 498 (¶36) (Miss. Ct. App. 2012) (affirming the grant of summary judgment to the defendants where the plaintiffs did not sufficiently allege a genuine dispute as to the element of bad faith). "Bad faith" in this context "raises an issue of motive." *Morrison*, 798 So. 2d at 575 (¶26). And "the conclusion [of bad faith] must be that the actor was malicious or recklessly disregarding the rights of the

person injured." *Id*.

¶15.    In short, if the actor was not within the scope of his authority, then the privilege, this specific example of a "right," does not apply. However, if the actor is within the scope of the actor's responsibility, then for the "without right" portion of the third prong to be met, the actor must be found to have acted in bad faith, and motive is relevant to a determination of bad faith.

¶16.    This privilege (or "right") applies to Springer on the facts of this case.[5] Springer occupied a position of responsibility on behalf of the County and was operating within the scope of that responsibility in matters related to this contract. Evaluating and mitigating claims for a contract adjustment were part of his responsibilities under the Green Book. Springer acknowledged the overage and Ausbern's entitlement to additional compensation.[6] Springer's attempt to evaluate and mitigate the overage after the fact – which would typically be done prior to approval of the additional work under the notice requirements of Green Book section 105.17, but which was not done here because Ausbern did not give notice of the overage until the project was complete – does not indicate an ill motive rising to the level of bad faith or intent to harm for the purpose of moving Springer's actions outside of the scope of his responsibility to the County and therefore outside his right to interfere. The

---

[5] The jury instruction on the elements of tortious interference stated in part "that Edward Springer intentionally and harmfully acted with malice, with no justification or excuse, to interfere with the Board of Supervisors' performance of the contract."

[6] To support that Springer's actions were related to his responsibility to the County and not in bad faith, Springer points out that the county engineer receives a percentage of the overall contract payment. Springer was therefore acting against his own pecuniary interest in attempting to negotiate down the unit price of the overage.

verdict against Springer was therefore improper.

> **II.** **Whether the trial court erred in failing to treat the tortious-interference claim against Springer as implicating the notice requirements of the Mississippi Tort Claims Act.**

¶17. Springer argued pretrial in his motion to dismiss and argues again here on appeal that the tortious-interference claim against him as a governmental employee implicated the Mississippi Tort Claims Act and that Ausbern was therefore required to comply with the Act's pre-suit notice requirements. *See* Miss. Code Ann. § 11-46-11(1) (Rev. 2012); *Ivy v. E. Miss. State Hosp.*, 191 So. 3d 120, 122 (¶8) (Miss. May 12, 2016). We agree with Springer's argument that the notice requirements of the Mississippi Tort Claims Act are applicable to the claim against him.

¶18. In *Whiting v. University of Southern Mississippi*, 62 So. 3d 907, 915 (¶15) (Miss 2011), the Mississippi Supreme Court stated:

> While [the plaintiff] attempts to characterize these claims as breach of contract, a fair reading of the facts of this case and the manner in which [the plaintiff] lays out her argument establish that if there were a claim to be made, it would be for tortious breach of contract and tortious interference with contract. As such, the claims made against the Board or the university are governed by the provisions of the MTCA.

*See also Miss. Dep't of Envtl. Quality v. Pac. Chlorine*, 100 So. 3d 432, 439 (¶8) (Miss. 2012). This holding supports that claims of tortious interference with a contract brought against an individual governmental employee implicate the pre-suit notice requirements of the MTCA.

¶19. The United States Court of Appeals for the Fifth Circuit has agreed and has treated *Whiting* as standing for the rule that a plaintiff alleging tortious interference against a public

employee must satisfy the notice requirements of the Mississippi Tort Claims Act, even when the suit is proceeding against only an individual. *Johnson v. City of Shelby, Miss.*, 743 F.3d 59 (5th Cir. 2013)[7] (tortious-interference claim against alderman subject to MTCA). *Johnson* states: "Because we apply the latest and most authoritative expression of state law applicable to the facts of a case, we follow *Whiting* here." *Id*. at 64. Subsequent federal cases agree. *See Idom v. Natchez-Adams School Dist.*, 115 F. Supp. 3d 792, 807 (S.D. Miss. 2015) ("Claims for tortious interference are subject to the MTCA and its notice requirements."). *Brown v. City of Saltillo*, Miss., 106 F. Supp. 3d 784, 792 (N.D. Miss. 2015) ("In *Whiting*, 62 So. 3d at 916, the Mississippi Supreme Court ruled that a malicious interference claim is subject to the MTCA and thus that the notice requirement applies to such claims.").

¶20.    Pre-suit notice is a "prerequisite to a claimant's right to file suit[,]" but "does not, however, touch on the merits of the claim." *Arceo v. Tolliver*, 19 So. 3d 67, 74 (¶38) (Miss. 2009). Pre-suit notice serves the important function of allowing the governmental entity to assess whether the employee acted within the scope of employment and to establish a position on whether the alleged conduct gives rise to an immunity exception. *See* Miss. Code Ann. § 11-46-5(2) (Rev. 2012) (employee not acting within scope of employment when acting with malice); *id.* (providing for governmental defense of employee not acting within scope of employment).

¶21.    The supreme court's position in *Whiting* is consistent with previous decisions of this Court. In *Dunston v. Mississippi  Department of Marine Resources*, 892 So. 2d 837, 842

---

[7] *Johnson* was reversed on an unrelated section 1983 ground in *Johnson v. City of Shelby, Mississippi*, 135 S. Ct. 346 (2014) (applying 42 U.S.C. § 1983 (2012)).

(¶13) (Miss. Ct. App. 2005), this Court stated that a claim of tortious interference against a government employee was appropriately initiated under the Mississippi Tort Claims Act. That suit, alleging tortious interference by a governmental employee with a wetlands-development contract, implicated Mississippi Code Annotated section 11-46-9(1)(h) (Rev. 2012), which provides immunity:

> Arising out of the issuance, denial, suspension or revocation of, or the failure or refusal to issue, deny, suspend or revoke any privilege, ticket, pass, permit, license, certificate, approval, order or similar authorization where the governmental entity or its employee is authorized by law to determine whether or not such authorization should be issued, denied, suspended or revoked unless such issuance, denial, suspension or revocation, or failure or refusal thereof, is of a malicious or arbitrary and capricious nature[.]

This provision closely resembles Springer's Green Book responsibilities concerning review, mitigation, and approval of alterations to the original construction contract, making the Mississippi Tort Claims Act the appropriate framework through which to determine whether a specified circumstance exists.[8]

¶22. As it did below at the hearing on Springer's motion to dismiss, Ausbern relies on the earlier case of *Zumwalt v. Jones County Board of Supervisors*, 19 So. 3d 672, 688 (¶84) (Miss. 2009), for the proposition that claims of tortious interference should be brought independently against governmental employees because the tort contains the essential element of malice. "[T]he Mississippi Supreme Court in *Whiting* did not reference or explicitly overrule *Zumwalt*. It is therefore unclear whether the Mississippi Supreme Court intended for *Whiting* to overrule *Zumwalt* or whether the two cases are somehow

---

[8] Springer asserts that the provisions of Mississippi Code Annotated section 11-46-9(1)(b), (d), (g), (h), (p), and (y) (Rev. 2012) apply to him.

10

distinguishable." *Dearman v. Stone Cty. Sch. Dist.*, No. 1:13-cv-267-HSO-RHW, 2014 WL 3747600, at *3 (S.D. Miss. July 29, 2014).[9] Absent resolution of any conflict between the two cases by the Mississippi Supreme Court, we agree with the approach of treating *Whiting* as the applicable rule. The pre-suit notice requirements of Mississippi Code Annotated section 11-46-11(1) therefore apply to the claim against Springer. Tortious claims against Mississippi governmental entities and their employees are cloaked in sovereign immunity, unless a waiver of sovereign immunity applies. Here, the prerequisite of statutory pre-suit notice was not attempted, so that waiver of sovereign immunity was not accomplished.

## CONCLUSION

¶23.    Springer acted within the scope of his responsibility to the County and without bad faith. Because his actions were not "without right or justifiable cause," the element of tortious interference that constitutes malice was not satisfied. The trial court also erred in finding that the claim against him did not implicate the pre-suit notice requirements of the MTCA. We therefore reverse the judgment against him.

¶24.    **THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT, IS REVERSED AND RENDERED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**IRVING, P.J., BARNES, ISHEE, CARLTON AND JAMES, JJ., CONCUR. LEE, C.J., AND FAIR, J., CONCUR IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. GRIFFIS, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION, JOINED BY LEE,**

---

[9] In *Zumwalt*, a governmental entity sued an individual seeking a permanent injunction related to that individual's claim of ownership of a license to run a nursing home. The individual brought a counterclaim against only governmental entities, not individuals, alleging various torts, including tortious interference.

**C.J., GRIFFIS, P.J., AND FAIR, J.**

**WILSON, J., CONCURRING IN PART AND IN RESULT:**

¶25.    I agree that Ausbern's claim for tortious interference with a contract fails as a matter

of law because there is no evidence of "malice," which is an essential element of the tort.

I also agree that, for that reason, we should reverse and render judgment in favor of Springer.

¶26.    However, I disagree with the majority's conclusion that Ausbern's claim for tortious

interference with a contract was subject to the pre-suit notice requirements of the Mississippi

Tort Claims Act ("MTCA").  In fact, by proceeding against Springer individually without

serving notice under the MTCA, Ausbern was simply following the clear holding of the

Mississippi Supreme Court's opinion in *Zumwalt v. Jones County Board of Supervisors*, 19

So. 3d 672 (Miss. 2009):

> The MTCA does not apply to all claims against governmental entities.
> The Act provides specific exclusions to its protections and requirements, and
> each claim must be examined for MTCA application.
>
> *With respect to the claim of tortious interference with business relations
> and/or contracts, the MTCA does not apply.* The MTCA provides immunity
> for the alleged torts of governmental entities.  However, the MTCA waives
> that immunity, and the governmental entity is liable, for injuries caused by the
> entity or its employees while acting in the course and scope of their
> employment.
>
> Certain intentional torts are excluded from the MTCA's waiver of
> immunity.  Subsection (2) of Mississippi Code Section 11-46-5 provides that
> torts constituting fraud, malice, libel, slander, defamation, or any criminal
> offense other than traffic violations are not within the course and scope of
> employment.   Thus, these intentional torts are outside the scope of the
> MTCA's waiver of immunity, and the MTCA does not apply.
>
> Tortious interference with business relations and contracts requires
> proof of malice as an essential element.  *Therefore, the MTCA does not apply*

12

*to these torts, and any legal action against a governmental employee for these intentional torts must necessarily proceed against him or her as an individual.*

*To the extent the chancellor determined that notice was required before pursuing claims of tortious interference with either business relations or contracts, this was error.*

*Id.* at 688 (¶¶81-85) (emphasis added; citations omitted).

¶27. Thus, in this case, Ausbern properly sued Springer "as an individual" on a non-MTCA claim for tortious interference with a contract—indeed, per *Zumwalt*, Ausbern was *required* to pursue the claim on that basis. And, like the chancellor in *Zumwalt*, the majority errs by holding that the claim is subject to the MTCA and that notice was required.

¶28. *Zumwalt*'s holding follows directly and logically from the plain language of the MTCA. "For . . . purposes of [the MTCA] an employee shall not be considered as acting within the scope and course of his employment and a governmental entity shall not be liable or considered to have waived immunity for any conduct of its employee if the employee's conduct constituted . . . malice . . . ." Miss. Code Ann. § 11-46-5(2) (Rev. 2012). Malice is an essential element of a claim for tortious interference with a contract. Therefore, the county was immune from liability for any alleged tortious interference by Springer, and Ausbern properly proceeded against Springer individually rather than serving pre-suit notice on the county. *Zumwalt*, 19 So. 3d at 688 (¶¶81-85).

¶29. I agree with the majority that the Supreme Court's subsequent decision in *Whiting v. University of Southern Mississippi*, 62 So. 3d 907 (Miss. 2011), appears to conflict with *Zumwalt* insofar as it suggests that a claim for tortious interference with a contract is subject to the MTCA. *See id.* at 915 (¶15). However, the plaintiff in *Whiting* did not actually assert

13

a claim for tortious interference; rather, she asserted a claim for breach of contract, which failed as a matter of law, and the Court stated "that if there were a claim to be made, it would be for tortious breach of contract and tortious interference with contract." *Id.* That is the opinion's only mention of a claim for tortious interference with a contract. Moreover, *Whiting* did not discuss or even mention *Zumwalt* or the fact that "malice" is an essential element of the tort. Finally, post-*Whiting*, this Court has continued to cite *Zumwalt* for the proposition that a "[c]laim of tortious interference with business contracts requires proof of malice and is, therefore, not subject to the MTCA." *Weible v. Univ. of S. Miss.*, 89 So. 3d 51, 64 (¶40) (Miss. Ct. App. 2011); *see also Kelley LLC v. Corinth Pub. Utils. Comm'n*, No. 2013-CA-00923-COA, 2016 WL 225356, at *15 n.7 (Miss. Ct. App. Jan. 19, 2016) (stating that the MTCA does not waive sovereign immunity for claims alleging tortious interference with business relations because the tort requires proof of malice). For these reasons, I would not read *Whiting*'s passing reference to this tort as overruling, sub silentio, *Zumwalt*'s clear and considered holding that the tort is not subject to the MTCA's notice requirements.

¶30. Part II of the majority opinion holds that the MTCA requires a plaintiff to serve a governmental entity with pre-suit notice of a claim for tortious interference with a contract, even though the MTCA and *Zumwalt* make clear that the governmental entity retains sovereign immunity on any such claim. I respectfully disagree with that holding. However, I concur in the majority's conclusion in Part I that Ausbern's claim fails as a matter of law because he failed to prove "malice," an essential element of the tort. I also concur in the result because Ausbern's failure of proof on an essential element is dispositive regardless of

14

whether the MTCA applies.

**LEE, C.J., GRIFFIS, P.J., AND FAIR, J., JOIN THIS OPINION.**