# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00188-COA

**BRANDI'S HOPE COMMUNITY SERVICES, LLC, WANDA KEITH AND DANNY O. COWART**                                   **APPELLANTS**

**v.**

**HEATHER DENICE WALTERS**                                   **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/25/2022 |
| TRIAL JUDGE: | HON. JOHN R. WHITE |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | MARK NOLAN HALBERT |
| | BRANDI S. DOSS |
| ATTORNEY FOR APPELLEE: | JIM WAIDE |
| NATURE OF THE CASE: | CIVIL - TORTS-OTHER THAN PERSONAL INJURY & PROPERTY DAMAGE |
| DISPOSITION: | REVERSED AND RENDERED - 06/20/2023 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**CARLTON, P.J., FOR THE COURT:**

¶1. Brandi's Hope Community Services LLC (Brandi's Hope) provides services to people with intellectual and developmental disabilities in a residential setting and day program. Danny Cowart is the owner and chief executive officer (CEO) of Brandi's Hope. Heather Denice Walters worked as a Direct Support Professional (DSP) for Brandi's Hope at Rock Cliff, a residential housing facility for adults. As a DSP, Walters assisted the residents with their daily needs.

¶2. Walters's employment was terminated following her handling of a March 2017

incident involving injuries sustained by a Rock Cliff resident named John.[1] Walters

suspected abuse, believing that John had been hit in the face by another DSP employed by

Brandi's Hope named Cleatonia "Toney" Burns. Walters took a photograph of John's

injured face with her personal cell phone. In addition to reporting the incident to her

supervisors, Walters also shared John's photograph with her cousin and former Brandi's

Hope employee Frankie Crump. Walters's employment was terminated for "violating

company policy" because she photographed John's injured face with her personal cell phone

and shared that photograph with Crump.

¶3.    Walters subsequently filed a complaint in the County Court of Lee County,

Mississippi, against Brandi's Hope and Cowart, asserting a retaliatory discharge claim

against Brandi's Hope and a "malicious-interference-with-employment" claim against

Cowart.[2] Walters alleged she was wrongfully discharged "in violation of public policy" for

allegedly "reporting illegal conduct." *See McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d

603, 607 (Miss. 1993).[3]

---

[1] In the interest of privacy, we use a pseudonym.

[2] Walters also asserted a malicious-interference-with-employment claim against
Wanda Keith, the site manager for the area including the Rock Cliff home. The jury
returned a verdict in Keith's favor. Walters did not appeal the defense verdict for Keith, and
the issues presented on appeal to the circuit court did not address any alleged prejudice to
Keith. Therefore, our disposition on appeal does not affect the verdict and judgment in
Keith's favor.

[3] In *McArn*, the Mississippi Supreme Court recognized two "narrow" public policy
exceptions to Mississippi's employment-at-will doctrine. *McArn*, 626 So. 2d at 607. At
issue in this case is the second exception: "[A]n employee who is discharged for reporting

2

¶4. The case proceeded to a jury trial. At trial, the defendants moved for a directed verdict on both counts against them at the close of Walters's case-in-chief. The county court denied that motion and denied the defendants' renewed motion for a directed verdict at the close of all the evidence. The jury returned a verdict in Walters's favor on the retaliatory discharge claim against Brandi's Hope and the malicious-interference-with-employment claim against Cowart. The jury awarded Walters $100,000 in compensatory damages. The county court denied the defendants' post-trial motion.

¶5. Brandi's Hope and Cowart appealed to the Lee County Circuit Court, which affirmed the trial court's rulings and the jury's verdicts.

¶6. Brandi's Hope and Cowart (collectively referred to at times as Brandi's Hope) appeal, raising the following assignments of error:

1. The trial court erred in expanding the *McArn* criminal acts public policy exception for retaliatory discharge and ignoring the statutory exception and reporting requirements of the Mississippi Vulnerable Persons Act (MVPA), Mississippi Code Annotated section 43-47-1 through section 43-47-39 (Rev. 2021);

2. Even if *McArn* applied, the trial court erred in finding that Walters made a "report" of the alleged "illegal activity of [her] employer" as required for a *McArn* retaliatory discharge claim;

3. There was insufficient evidence from which the jury could find a causal connection between Walters's alleged report of illegal activity and her discharge;

illegal acts of his employer to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." *Id.*

3

4. There was insufficient evidence from which the jury could find that Cowart intentionally and maliciously interfered with Walters's employment;

5. The trial court erred in admitting prejudicial evidence that DSP Toney Burns committed a criminal assault;

6. Certain jury instructions failed to accurately state the law of the case; and

7. The trial court erred in refusing to grant a new trial on the issue of damages or in the alternative, a remittitur.

¶7. For the reasons addressed below, we find that Brandi's Hope and Cowart were entitled to a directed verdict and that judgment should be reversed and rendered in favor of Brandi's Hope on Walters's retaliatory discharge claim against it and in favor of Cowart on Walters's malicious-interference-with-employment claim against him.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶8. Walters filed a complaint against Brandi's Hope and Cowart in August 2017, asserting a retaliatory discharge claim against Brandi's Hope and a malicious-interference-with-employment claim against Cowart. The case was tried before a county court jury from November 18, 2019, until November 21, 2019.

¶9. Walters testified during her case-in-chief. She also called two former Brandi's Hope employees as witnesses, and she called Keith as an adverse witness. The depositions of John's parents were also read to the jury.

¶10. Walters began working at Brandi's Hope as a DSP in April 2016. She was assigned to the Rock Cliff residential home. This home housed four adult residents. Walters's duties

4

included cooking and cleaning for the residents, bathing them, and changing their undergarments, as needed.

¶11. When Walters was hired, she signed and agreed to Brandi's Hope's "Confidentiality and Communication Policy," which provides, in relevant part, as follows:

> I agree that I will not divulge Brandi's Hope Community Services data to any unauthorized person for any reason. Neither will I directly nor indirectly use, or allow the use of Brandi's Hope data for any purpose other than directly associated with my official assigned duties.

> I understand that CLIENT INFORMATION, including financial data, is strictly confidential.

> I will not, either by direct action or by counsel, discuss, recommend or suggest to any unauthorized person the nature or content of any Brandi's Hope information. I agree to the conditions stated in this policy.

> I understand that violation of Brandi's Hope Community Services confidentiality and communications policy may result in disciplinary action, up to and including immediate termination.

¶12. Similarly, Brandi's Hope's employee handbook provides as follows:

> As an employee of Brandi's Hope, you may see, hear or have access to confidential information. It is your legal and ethical responsibility to safeguard the privacy of all written or spoken information you might access through conversations, phone conversations, meetings, files, assessments, data, facsimile transmissions, reports, letters, memos, mail, e-mails or any other documents or data . . . . Furthermore, it is a violation of policy to either by direct action or by counsel to discuss, recommend, or suggest to any unauthorized person the nature or content of any Brandi's Hope information.

> All individuals in your care have a fundamental right to privacy that is governed by the law. All employees of Brandi's Hope will be trained to respect the health care information of the individuals who receive services and support through Brandi's Hope. They will treat all medical, personal, and financial information as confidential.

5

Any individual who breaches this policy is subject to discipline, up to and including termination.

¶13. As part of her employee training, Walters completed numerous online computer courses. With respect to the circumstances at issue here, Walters completed the "BHCS Serious Incidents Reporting in Vulnerable Adults" course. The course identified the site manager, the CEO of Brandi's Hope, the resident's parents or guardians, the Office of Constituency Services, and the Mississippi Department of Mental Health (MDMH) as the appropriate contacts for reporting a serious incident.

¶14. The course materials also specifically addressed the reporting requirements for DSPs like Walters: "As a direct support professional, you are to report the incident to your Site Manager, who will contact the compan[y's] CEO. The CEO or his designee will contact the other parties [who] need to be notified." The materials further provided that "[a] written report of the incident will be made and forwarded to the appropriate parties."

¶15. Walters also completed a course entitled "HIPAA Privacy"[4] as part of her training.

¶16. John was a resident at Brandi's Hope. He has diagnoses for mental retardation and cerebral palsy. Walters described John as having the mind of a five- or six-year-old, though John was in his early twenties.

¶17. Walters testified about the incident involving John in March 2017. Her shift began at 1:00 a.m. on Thursday, March 16, 2017, and she worked until about 8:00 that morning.

___

[4] HIPAA is an acronym for the Health Insurance Portability and Accountability Act.

Around 6:30 a.m., Walters walked into John's room to wake him up. After turning on the light and telling him to get up for breakfast, Walters returned to the kitchen. Shortly afterward, Walters heard another resident ask John what happened to his face. She turned to see John had walked into the kitchen, and she saw that he had black eyes and bruises on his face. The resident asked John if "Toney" hit him. Toney Burns was another DSP. John answered, "Yeah."

¶18. Walters called Caleb Texidora, her immediate supervisor, and Keith, the site manager, to report the incident. She did not get an answer from either of them at that time. Walters then took pictures of John's injured face with her personal cell phone. She sent text messages to Texidora and Keith to tell them what had happened and included the picture of John's face with her text messages.

¶19. Keith returned Walters's call that morning before 8:00 a.m. while Walters was still at work. Walters told Keith about John's injuries and that he said he was "beat up" and that "Toney had hit him." Walters testified Keith told her that "she would look into it, and she would get some information on it and get to the bottom of it." Victor Knight, another DSP who arrived at Rock Cliff around 7:45 a.m. to transport John to a day program, also took photos of John's injuries with his personal cell phone and sent them to Keith.

¶20. After leaving work, Walters went to Frankie Crump's home. Crump had previously worked as a supervisor at Brandi's Hope but had not worked there since October 2016. Walters testified that Crump was getting ready to go to her job at Walmart, so she could not

7

discuss the matter with Walters that morning. Walters provided a photograph of John's injured face to Crump at that time. Walters said that because her phone was having problems with text messages, she used Crump's phone to take a picture of her own phone while a picture of John was on display.

¶21. Later that day, Walters went to Walmart, where Crump worked, and discussed the incident with her. Walters testified that she went to talk with Crump because Crump had been a supervisor at Brandi's Hope. Walters said, "I wanted to make sure that I didn't have any more obligations of who I needed to report it to . . . and I figured she would have knowledge on what I needed to do."

¶22. Walters acknowledged that she had already reported the incident to Keith, the site manager, as well as her immediate supervisor, Texidora. Walters further admitted that at the time she shared John's picture with Crump, she had no knowledge of whether Keith had already reported the incident to anyone or what investigative activities Keith had undertaken. Walters did not learn until she talked with Crump at Walmart that Crump had reported the incident to the attorney general's office, including the photograph of John.

¶23. Keith was called as an adverse witness at trial. As noted, Keith had spoken with Walters about the incident before Walters completed her shift at about 8:00 a.m. on Thursday morning. Keith then spoke with DSP Knight about the incident and also talked with John and his roommate about what had happened. Keith asked Knight to delete the photo of John from his personal cell phone and he did so. When Keith talked with John, he told her that

8

"he fell and bumped his head and Toney hit him." According to Keith, based on the way John's roommate was acting, she thought he may have hit John. Keith notified John's mother about the incident that evening, indicating that the roommate may have hit John, and that at one point John also said he had hit himself.

¶24. The next day, Friday, March 17, John's father came to the Brandi's Hope facility to discuss John's injuries. John's father also told Keith that he had received the photograph of John from a former Brandi's Hope staff member. That same day, Keith sent a detailed e-mail to Cowart notifying him of the incident with John. After Cowart received the email, Keith discussed the incident with him. Keith then submitted an electronic report to the MDMH and the attorney general's office that same day.

¶25. As part of her investigation, Keith also obtained witness statements. Walters gave a written statement regarding her knowledge of the incident involving John. Walters also gave a written statement attesting that she did not "take a picture of [John] and send it to a former staff."[5]

¶26. Walters was counseled against taking a picture of John using her personal phone because doing so "violated company policy regarding HIPPA regulations." Walters was also counseled for not notifying Keith immediately when she learned about John's injuries.

---

[5] When cross-examined about this statement, Walters said that she did not send a photo of John to Crump; rather, she used Crump's phone to take a picture of her own phone while a picture of John was on display. Walters did this because her phone was having problems with text messages.

Knight (who also photographed John's injured face) was also counseled and given a formal written reprimand for using his personal phone to take a picture of John. At the time she counseled Walters, Keith did not know Walters was the person who had shared the picture of John's injuries with a non-employee.

¶27. At the close of Walters's case-in-chief, the defendants moved for a directed verdict pursuant to Mississippi Rule of Civil Procedure 50 on both causes of action. The trial court denied the motion.[6]

¶28. The defense called Cowart as its only witness. Cowart and his wife started Brandi's Hope in April 2010. Their daughter (Brandi), who was severely disabled, "was the catalyst" for them starting Brandi's Hope. They saw a need for more "person-centered" facilities for persons having intellectual and developmental disabilities. Before starting Brandi's Hope, Cowart had been the director of support and coordination for a regional service provider to such individuals.

¶29. The e-mail that Cowart received from Keith on Friday, March 17, 2017, was the first time Cowart had heard of the incident involving John. When he got Keith's email, he and Keith discussed the incident, and he also learned that a photograph of John had been shared with a non-employee.

¶30. Cowart instructed Keith to report the incident to the MDMH and the attorney

---

[6] Details of the parties' arguments and the trial court's rulings with respect to particular issues on appeal are discussed in context later.

10

general's office. He advised Keith that in doing so, "keep opinions out. Report the facts as you kn[o]w them, as they came to you, and put it in a little narrative and submit it." Cowart also instructed Keith to investigate the disclosure of the photograph and to counsel and issue "write-ups" to Walters and Knight for putting personal health information, i.e., photographs of the residents, on their cell phones.

¶31. After Keith completed interviewing other employees, she and Cowart learned that Walters had disclosed the photograph. The following Monday, Cowart decided to terminate Walters's employment for disclosing the photograph in violation of company policy. He instructed Keith to immediately place Walters on administrative leave. Cowart then sent Walters a letter informing her that her employment was terminated for "Violation of Company Policy," which she received a copy of a few days later.

¶32. The defense rested. Walters called Joe Sanderson as a rebuttal witness. He had been an investigator in the vulnerable-adults unit at the attorney general's office from 1998 to 2017. He testified that the attorney general's office received reports of the incident from both Brandi's Hope and Crump on the same day. Sanderson's testimony will be discussed in further detail below.

¶33. The defendants renewed their motion for a directed verdict at the close of all the evidence, which the trial court denied.

¶34. The jury returned a verdict in Walters's favor on her retaliatory discharge claim against Brandi's Hope and her malicious-interference-with-employment claim against

11

Cowart. The jury awarded Walters $100,000 in compensatory damages, which were defined in a jury instruction to include "loss of income" and "[a]ny damages for mental anguish, stress, or loss of enjoyment of life."

¶35. The defendants filed a motion under Rule 50(b), seeking a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial pursuant to Rule 59. In the further alternative, the defendants sought a remittitur on the damages awarded Walters. After a hearing, the trial court denied this post-trial motion on May 5, 2020.

¶36. The defendants appealed the trial court's judgment and its order denying the post-trial motion to the Lee County Circuit Court. The circuit court affirmed the jury's verdict and the trial court's rulings on January 25, 2022.

## STANDARDS OF REVIEW

¶37. "[A] de novo standard of review [applies to] questions of law, jurisdictional questions[,] and issues of statutory interpretation." *Greenville Pub. Sch. Dist. v. Thomas*, 352 So. 3d 190, 192 (¶6) (Miss. 2022).

¶38. The "standard of review on motions for directed verdict and judgment notwithstanding the verdict are the same." *Jackson HMA LLC v. Morales*, 130 So. 3d 493, 497 (¶11) (Miss. 2013). Specifically:

> Motions for directed verdict and judgment notwithstanding the verdict consider whether the evidence is sufficient to support a verdict for the non-moving party. When determining whether the evidence was sufficient, the critical inquiry is whether the evidence is of such quality that reasonable and fairminded jurors in the exercise of fair and impartial judgment might reach different conclusions. Thus, this Court considers whether the evidence, as

applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated. For purposes of our review, we consider all evidence in the light most favorable to the nonmoving party, and we view all reasonable inferences in the party's favor.

*Id.* (citations and internal quotation marks omitted).

## DISCUSSION

### I. The Retaliatory Discharge Claim Against Brandi's Hope

¶39. Brandi's Hope asserts that the trial court erred when it "expanded" *McArn* to create an exception to the at-will employment doctrine for an employee disclosing suspected abuse to "anyone else" where the MVPA already provides statutory protection from employer retaliation for reports of suspected abuse made to the proper authorities. For the reasons addressed below, we agree.

### A. Overview of the Applicable Law

¶40. We begin with a review of the applicable law relating to the issues before us. "In Mississippi—when there is no written employment contract—the employment relationship is at-will, which means that 'an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, excepting only reasons independently declared legally impermissible.'" *Galle v. Isle of Capri Casinos Inc.*, 180 So. 3d 619, 622 (¶13) (Miss. 2015) (quoting *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 986 (¶46) (Miss. 2004)).

#### 1. *McArn*

¶41. *McArn* provides a "narrow" public policy exception to Mississippi's employment-at-will doctrine that "[a]n employee who is discharged for reporting illegal acts of his employer

13

to the employer or anyone else is not barred by the employment at will doctrine from bringing action in tort for damages against his employer." *McArn*, 626 So. 2d at 607. This "exception 'is based on an employer's duty not to thwart the public interest by terminating employees for speaking the truth.'" *Frank v. City of Flowood*, 203 So. 3d 786, 792 (¶27) (Miss. Ct. App. 2016) (quoting *Cmty. Care Ctr. of Aberdeen v. Barrentine*, 160 So. 3d 216, 220 (¶14) (Miss. 2015)).

### 2.    The Anti-Retaliation and Reporting Provisions of the Mississippi Vulnerable Persons Act (MVPA)

¶42.    The MVPA contains an exception to Mississippi's employment-at-will doctrine that specifically addresses reports of suspected abuse: "No person shall terminate from employment, demote, reject for promotion or otherwise sanction, punish or retaliate against any individual who, in good faith, makes a report as provided in this section . . . ." Miss. Code Ann. § 43-47-37(5)(b) (Rev. 2015) (the MVPA anti-retaliation provision).

¶43.    With respect to the reporting requirements under the MVPA, section 43-47-37(1) provides that "[a]ny person who, within the scope of his employment at a care facility . . . has knowledge of or reasonable cause to believe that any patient or resident of a care facility has been the victim of abuse, neglect or exploitation shall report immediately the abuse, neglect or exploitation." A care facility's reporting requirements are set forth in section 43-47-37(2), which  provides that "[t]he reporting of conduct as required by subsection (1) of this section shall be made . . . to the State Department of Health and the Medicaid Fraud Control Unit of the Attorney General's Office."

14

¶44.   Section 43-47-37(4) sets forth the reporting guidelines for "any other individual who has knowledge of or reasonable cause to believe that any patient or resident of a care facility has been the victim of abuse, exploitation or any other criminal offense," like Walters. This section provides that any such person "may make a report to the State Department of Health and the Medicaid Fraud Control Unit." Miss. Code Ann. § 43-47-37(4).[7]

### 3.      The Suspected Abuse Reporting Provisions under the Health Insurance Portability and Accountability Act (HIPAA)

¶45.   Additionally, Brandi's Hope is a "covered entity" under HIPAA, 45 C.F.R. § 160.103. "[P]rotected health information" (PHI) means "individually identifiable health information" maintained in electronic media or "[t]ransmitted or maintained in any other form or medium," *id.*, such as the photograph of John's injured face.[8] Like the MVPA, HIPAA

---

[7] Regarding situations other than those concerning vulnerable persons in care facilities, section 43-47-7 provides that reports are to be made to the Department of Human Services or the county department of human services where the vulnerable person is located. Miss. Code Ann. § 43-47-7(1)(a) (Rev. 2015).

[8] "Individually identifiable health information" is defined pursuant to 45 C.F.R. § 160.103 as follows:

Individually identifiable health information is information that is a subset of health information, . . . and:

(1) [i]s created or received by a health care provider . . . ; and

(2) [r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and

15

regulations likewise specifically identify the appropriate persons and agencies to which allegations of abuse and neglect should be reported, as well as the appropriate method of reporting the allegations. In particular, "[a] covered entity may use or disclose protected health information to the extent that such use or disclosure is required by law and the use or disclosure complies with and is limited to the relevant requirements of such law." 45 C.F.R. § 164.512(a). Further, "[a] covered entity must meet the requirements described in paragraph (c) . . . of this section for uses or disclosures required by law." *Id.*

¶46. Paragraph (c) describes the "[p]ermitted disclosures" under this section, and includes "protected health information about an individual whom the covered entity reasonably believes to be a victim of abuse, neglect, or domestic violence *to a government authority, including a social service or protective services agency, authorized by law to receive reports of such abuse, neglect, or domestic violence.*" 45 C.F.R. § 164.512(c) (emphasis added).

### B. Procedural Bar

¶47. As an initial matter, Walters asserts that Brandi's Hope is barred from asserting on

---

(i) [t]hat identifies the individual; or

(ii) [w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual.

In this case, Walters documented John's injuries (the PHI) in the course and scope of her employment by photographing them with her personal cell phone, rather than the company phone. Walters was also reprimanded for using her personal cell phone in doing so, as it was in violation of the HIPAA privacy rule and Brandi's Hope's own confidentiality policies.

16

appeal that the trial court "expanded" *McArn* and ignored the MVPA's limited anti-retaliation provision because Brandi's Hope did not raise this issue in the trial court. *Lewis v. Forest Fam. Prac. Clinic P.A.*, 124 So. 3d 654, 658 (¶16) (Miss. 2013) ("It is well-settled that issues presented for the first time on appeal are procedurally barred from consideration."). But Walters relies solely on defense counsel's argument at the close of Walters's case-in-chief to support this proposition.[9]

[9] The dissent asserts that Brandi's Hope cannot raise this issue on appeal because it did not plead it "as an affirmative defense in its answer." *Walters*, however, did not make this argument in her appellate briefing. She did not state this contention or, in any way, support such a contention with authority or citation to the record. Mississippi Rule of Appellate Procedure 28(a)(7) requires that the argument portion of an appellee's brief "shall contain the *contentions* of [appellee] with respect to the issues presented, and *the reasons* for those contentions, *with citations to the authorities, statutes, and parts of the record relied on.*" (Emphasis added). Because Walters has not raised this argument in any form, we decline to consider it. As this Court found in *Okhuysen v. City of Starkville*, 333 So. 3d 573, 585 (¶33) (Miss. Ct. App. 2022), "[t]he premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." (Quoting *Carducci v. Regan*, 714 F.2d 171, 177 (D.C. Cir. 1983)); *see Rosenfelt v. Miss. Dev. Auth.*, 262 So. 3d 511, 519 (¶27) (Miss. 2018) (declining "to address an issue that has not been briefed on appeal[,]" recognizing that "[s]imply put, we will not act as an advocate for one party to an appeal. The appellant[/appellee] must affirmatively demonstrate error in the court below, and failure to do so waives an issue on appeal." (citation and internal quotation marks omitted) (quoting *Jefferson v. State*, 138 So. 3d 263, 265 (¶9) (Miss. Ct. App. 2014))); *see also Griner v. Griner*, 282 So. 3d 1243, 1251 (¶31) (Miss. Ct. App. 2019) ("Failure to support allegations of error with argument or authority results in waiver.").

Even if Walters had asserted this argument, we would not find it persuasive. Walters's first amended complaint simply alleged she was "discharge[d] in violation of public policy," making no mention of *McArn or* the MVPA. Nevertheless, despite Walters's lack of clarity as to what claims she was actually asserting, Brandi's Hope raised as its fifth affirmative defense in its answer that Walters's "allegations do not implicate *any* exceptions to Mississippi's employment at will doctrine, and [Walters's] wrongful termination claim

17

¶48.    We acknowledge that *at that point in the trial*, Brandi's Hope focused on arguments relating to *McArn.* For example, Brandi's Hope asserted Walters's claim against it should be dismissed as a matter of law because there was no evidence that Walters "reported" any "illegal activity" by her employer. The MVPA provisions had not been raised at that point. In responding to the defense's arguments, however, plaintiff's counsel asserted that Walters's conduct was also protected by section 43-47-37(5)(b) of the MVPA. Defense counsel noted that Walters had not pleaded a statutory retaliatory claim under the MVPA. Plaintiff's counsel then moved to amend the complaint in conformance with the proof that "in addition [to] violating the *McArn* Doctrine, [Brandi's Hope's actions] also violated the statute." The trial court denied the defendants' motion for a directed verdict and held in abeyance Walters's motion to amend her complaint. Walters never sought a ruling on that motion.

¶49.    As the trial continued, plaintiff's counsel addressed section 43-47-37(5)(b) of the MVPA during the defense's case-in-chief. For example, plaintiff's counsel thoroughly questioned Cowart about the MVPA's anti-retaliatory provision and reporting requirements during Cowart's cross-examination.

¶50.    At the close of all the evidence, the defendants renewed their directed verdict motion

---

is barred." (Emphasis added). This defense embodies the very crux of Brandi's Hope's argument: that the trial court erred in expanding *McArn* to encompass an exception not recognized by the MVPA, where that Act already provides for statutory protection for reports of suspected abuse of vulnerable persons made to the proper authorities. Under the circumstances, we find that this affirmative defense was sufficient to preserve the subject issue for appeal.

and at that time their counsel addressed the "legal issues" concerning the MVPA and its interplay with *McArn*. In particular, Brandi's Hope asserted that Walters did not make a protected report of abuse under the MVPA *or McArn* because her acts did not meet the statutory criteria. Defense counsel pointed out that the MVPA's anti-retaliatory provision only applies to a person who "makes a report as provided in this section." Miss. Code Ann. § 43-47-37(5)(b). For an employee like Walters, the reporting guidelines provide that an employee who observes suspected abuse "may make a report to the State Department of Health and the Medicaid Fraud Control Unit" pursuant to section 43-47-37(4). Defense counsel then argued that there was nothing in the statute "about reporting to a friend, providing [protected, personal health information] to a friend."[10]

¶51. We also observe that the trial court specifically addressed the MVPA. The trial judge asked counsel whether section 43-47-37(5)(b) created a statutory private cause of action. Plaintiff's counsel responded, "I don't think it's necessary to get in[to] all of these technicalities about what that [statute] means, because it's covered by *McArn* . . . especially since *McArn* has been expanded." At the conclusion of the parties' arguments, the trial judge ultimately ruled:

> I think that statute just, basically, codifies the *McArn* case is what it sounds like. *McArn* even goes further than the statute, but that's not germane to the

---

[10] Walters, instead, disclosed John's photograph and the circumstances surrounding the incident to Crump—Walters's cousin and a disgruntled former employee who did not serve in any state or federal official or law enforcement capacity authorized to receive such information.

19

issue in this trial. It's strictly a retaliatory discharge on the basis of reporting illegal or unlawful activity. All right. Well, post-trial motions are denied.[11]

Thus, the trial court considered the MVPA and ruled that the MVPA "basically codified *McArn* . . . [and] *McArn* even goes further than the statute, but that [was not] germane to the issue in this trial." This "expansion" of *McArn*—that the trial court believed was not "germane" to the issues before it despite the limiting provisions of the MVPA—is the very issue Brandi's Hope argued against at trial, in its post-trial motion,[12] and in its appellate

[11] Later, during the jury charge conference, the trial court summarized its understanding of *McArn* as applied to the case:

> *McArn* indicates that the Mississippi Supreme Court has held that there's a public policy exception for the employment at will doctrine and this should be so whether there is a written contract or not. . . . And it [(*McArn*)] indicates that one of those exceptions would be an employee who was discharged for reporting illegal acts of his employer to the employer or anyone else. Ms. Crump would fall under the category of anyone else, and [*McArn* provides] that [an employee is] . . . not barred by the employment[-]at[-]will doctrine from bringing action in tort against his employer.

[12] In its briefing supporting its JNOV motion, Brandi's Hope reiterated that "Mississippi statutory law . . . protects a reporter of abuse or neglect from retaliation only if the report is made to the Department of Human Services or the Medicaid Fraud Unit of the Attorney General's office," citing sections 43-47-37(1)-(2), (4) and section 43-47-37(5)(b) of the MVPA. Brandi's Hope then argued that "[a]lthough the language in *McArn* states that an employee may not be terminated for 'reporting illegal acts of his employer to the employer or anyone else,' disclosing protected health information to an unauthorized person can hardly be considered a 'report' protected by *McArn*."

The dissent asserts that Brandi's Hope failed to "[i]nstruct the [j]ury on [the] MVPA or [its] [r]eporting [r]equirements" and thus was "barred" from raising this issue post-trial. But this was not a question for the jury. Rather, Brandi's Hope asserted that a JNOV was proper because Walters failed to meet her burden of presenting sufficient evidence to support submitting her retaliatory discharge claim to the jury at all. As such, we are not convinced by the dissent's assertion on this point. In any event, we again observe that

20

briefing in the circuit court.[13]  It is the same issue Brandi's Hope asserts on appeal, albeit in a more detailed and refined form.  Neither Walters, nor the dissent, cite any legal authority that prohibits a party from refining and further explaining an issue on appeal as Brandi's Hope has done here.

¶52.    Upon review, we find that Brandi's Hope sufficiently raised the MVPA issue at trial, Walters had the opportunity to address it during trial, in post-trial motion briefing, and in the circuit court, and the issue was essentially the subject of a ruling by the trial court which has been appealed.  Accordingly, we find that Brandi's Hope sufficiently raised this issue in the trial court and did not waive it on appeal.

### C.    The MVPA Anti-Retaliation Provision and *McArn*

¶53.    As noted, Brandi's Hope asserts that the trial court erred by expanding *McArn*'s public policy exception for the "reporting of illegal acts" to "anybody else" when the MVPA already provides statutory protection from employer retaliation for reports of suspected abuse of

---

Walters never made this assertion in her appellate brief.  It is therefore waived.  *See Okhuysen*, 333 So. 3d at 585 (¶33); *Griner*, 282 So. 3d at 1251 (¶31); M.R.A.P. 28(a)(7).

[13]  Just as Brandi's Hope asserts in this appeal, it asserted in its appellate briefing in the circuit court that Walters's sharing of the photograph with Crump did not constitute a "report" protected by state or federal law, including "HIPAA, *the* [*MVPA*] and Brandi's Hope's policy and training" (emphasis added), which all "specifically identify the appropriate persons and agencies that allegations of abuse and neglect should be reported to, and the appropriate method of reporting the allegations."  As Brandi's Hope argued in its renewed motion for a directed verdict and in its post-trial briefing, "although the language in *McArn* states that an employee may not be terminated for 'reporting illegal acts of his employer to the employer or anyone else,' disclosing protected health information to an unauthorized person can hardly be considered a 'report' protected by *McArn*."

21

vulnerable persons to the appropriate authorities.

¶54.    In this context, the MVPA modifies *McArn* by defining the requirements for protected reports of abuse, i.e., the MVPA requires that reports be made to the public authorities identified by the Legislature as set forth in sections 43-47-37(1)-(2), (4), and (5)(b).  So, Brandi's Hope argues that because "the Legislature clearly intended to protect from retaliation those who make external reports of abuse to the proper authorities, any common law cause of action must be similarly limited to those who report abuse or neglect to the appropriate law enforcement authorities."  In this regard, because Walters's disclosure to Crump "would [not] be recognized even under the broadest interpretation of the MV[P]A, her claim for discharge in violation of public policy fails as a matter of law."  We agree.

¶55.    We find that the Mississippi Supreme Court's decision in *Swindol v. Aurora Flight Sciences Corp.*, 194 So. 3d 847 (Miss. 2016), supports this analysis.  In *Swindol*, the United States Court of Appeals for the Fifth Circuit certified a question to the Mississippi Supreme Court asking, "Whether in Mississippi an employer may be liable for a wrongful discharge of an employee for storing a firearm in a locked vehicle on company property in a manner that is consistent with Mississippi Code [Annotated] [s]ection 45-9-55 [(Rev. 2015)]." *Id.* at 848 (¶1). Section 45-9-55 prohibits an employer from enforcing any policy that effectively prohibits "a person from transporting or storing a firearm in a locked vehicle in any parking lot, parking garage, or other designated parking area."  Miss. Code Ann. § 45-9-55.

¶56.    The supreme court answered the certified question in the affirmative, recognizing that

22

"an employee may be discharged at the employer's will for good reason, bad reason, or no reason at all, *excepting only reasons independently declared legally impermissible*." *Id.* at 854 (¶20) (emphasis added) (quoting *McArn*, 626 So. 2d at 606). It reasoned that by enacting a statutory restriction on employers, the Mississippi Legislature "independently declared via [s]ection 45-9-55 that terminating an employee for having a firearm inside his locked vehicle is legally impermissible." *Id.* (internal quotation marks omitted).

¶57.    We find it significant that in reaching this conclusion, the supreme court explicitly did not extend *McArn* to recognize an additional judicial exception to employment-at-will where there was already a statutory exception. *Id.* at 852 (¶16). The supreme court explained that there was no need to "judicially graft another exception to the employment-at-will doctrine . . . because the Legislature already has." *Id.* (internal quotation marks omitted). We also find it relevant that the supreme court was careful to limit the exception to the scope of the statute, noting "that [s]ection 45-9-55(4) provides that '[t]his section does not authorize a person to transport or store a firearm on any premises where the possession of a firearm is prohibited by state or federal law.'" *Id.* at 853 n.4. "So our opinion here should not be read to address a situation in which possession of a firearm in a certain location is prohibited by law." *Id.*

¶58.    Analogous to the statute in *Swindol*, through the MVPA, the Legislature has "independently declared" that it is "legally impermissible" to terminate an employee who, in good faith, makes a report of abuse pursuant to the guidelines delineated in the MVPA.

23

*See* Miss. Code Ann. § 43-47-37(5)(b). Following the analysis in *Swindol*, we find that the trial court must likewise be limited with respect to adopting a "new" judicial public policy exception based on *McArn* when the MVPA already establishes the rights and limitations of employees to report suspected abuse without retaliation.

¶59. In this case, the trial court determined that Walters's disclosure of the suspected abuse to Crump was a "report" to "anyone else" under *McArn*. Rather than applying the clear statutory exception for reports of abuse under the MVPA, the trial court saw *McArn* as allowing a common law cause of action for retaliatory discharge for any person who discloses, without limitation, abuse of a vulnerable person to "anyone else," despite the Mississippi Legislature having already adopted narrow statutory protection for appropriate reports.

¶60. We find that such a broad ruling is inconsistent with the long-standing rule of at-will employment in Mississippi, the narrow and limited exceptions traditionally carved out for public policy, and the supreme court's analysis in *Swindol*. Creating exceptions to the at-will doctrine is a legislative concern, not a judicial task—particularly where, as here, the Legislature has plainly spoken. Indeed, we are bound to defer to the legislative process under these circumstances. *See S. Farm Bureau Life Ins. Co. v. Thomas*, 299 So. 3d 752, 757-58 (¶¶19-20) (Miss. 2020) (refusing to "judicially carve out a public-policy exception to the at-will doctrine based on discrimination" where such actions "have already been 'independently declared legally impermissible' under [federal law]" (quoting *Swindoll*, 194

24

So. 3d at 852 (¶16))); *Kelly v. Miss. Valley Gas Co.*, 397 So. 2d 874, 876 (Miss. 1981) (refusing to "engraft on the [Workers' Compensation] law [a retaliatory discharge] exception different from that expressed by the Legislature," recognizing that "[t]his is not the function of the judicial department").

¶61.   We also find it relevant that the MVPA, HIPAA regulations, and Brandi's Hope's policy and training specifically identify the appropriate persons and agencies that allegations of abuse and neglect should be reported to, as well as the appropriate method of reporting the allegations. *See* 45 C.F.R. § 160.103; 45 C.F.R. § 164.512(a)(c); Miss. Code Ann. § 43-47-37(1)-(2) & (5)(b).   None of these regulations, statutory provisions, or policies protect an individual who discloses suspected abuse to someone like Crump, who does not fall into any of these categories.   As such, although the language in *McArn* provides that an employee may not be terminated for "reporting illegal acts of his employer to the employer *or anyone else*," we find that disclosing protected, personal health information to Crump—Walters's cousin and a former employee with no authority to act on the allegation—simply does not constitute a "report" protected by *McArn*.   Rather, at least in the situation before us, we find that the suspected abuse must be "reported" to those authorized to receive such reports as delineated in the MVPA, HIPAA regulations, and Brandi's Hope's policies in order to ensure the confidential nature of the protected personal health information shared and the sensitive nature of the incident as a whole.

¶62.   Walters asserts several arguments supporting her position that there was no error in

25

the trial court's allowing the retaliatory discharge claim to go to the jury. We find these assertions unpersuasive. For example, she argues that "[c]ondemning [her] because she reported the abuse of a vulnerable adult to her immediate supervisor and to her site manager conflicts with Brandi's Hope's own written policies" that require her to do so. But our review of the record and the parties' briefs shows that the focus of the trial was on Walters's disclosing John's photograph to *Crump*—a person who was not employed by Brandi's Hope or authorized to receive such information; indeed, disclosure of John's photograph to Crump was not within any allowable disclosures under HIPAA. In contrast, both Keith and Cowart testified that the report Walters made to Keith (the site manager) was proper.

¶63. Walters also asserts that the company policy requiring an employee to report suspected abuse to the site manager conflicts with the MVPA. Based upon our review of the statute, however, we find that it does not. The MVPA requires *care facilities*, like Brandi's Hope, to report suspected abuse incidents to the MDMH and the attorney general. Miss. Code Ann. § 43-47-37(2). Pursuant to company policy, Walters's reporting responsibility as a DSP was as follows:

> As a direct support professional, you are to report the incident to your Site Manager, who will contact the compan[y's] CEO. *The CEO or his designee will contact the other parties [who] need to be notified. A written report of the incident will be made and forwarded to the appropriate parties*.[14]

---

[14] In contrast, "[a]ny other individual" who suspects a "resident of a care facility has been the victim of abuse," like Walters, "*may*" make a report to the MDMH and the attorney general's office. Miss. Code Ann. § 43-47-37(4) (emphasis added). This reporting requirement is not mandatory.

26

(Emphasis added). Thus, by requiring an employee to report suspected abuse to the site manager, Brandi's Hope ensures there is a consistent way in which a suspected abuse is investigated and reported to the proper authorities pursuant to the MVPA.

¶64. For the foregoing reasons, we find that it was reversible error for the trial court to not enter judgment as a matter of law in favor of Brandi's Hope on Walters's retaliatory discharge claim against it.

## II. The Malicious-Interference-with-Employment Claim against Cowart

¶65. Brandi's Hope asserts that the trial court erred when it denied the defendants' motions for a directed verdict and JNOV because Walters presented insufficient evidence at trial to create a jury question as to whether Cowart intentionally and maliciously interfered with her employment. We agree.

¶66. Our standard of review on this issue requires that we "consider[] whether the evidence, as applied to the elements of a party's case, is either so indisputable, or so deficient, that the necessity of a trier of fact has been obviated." *Jackson HMA LLC*, 130 So. 3d at 497 (¶11). "For purposes of our review, we consider all evidence in the light most favorable to the nonmoving party, and we view all *reasonable* inferences in the party's favor." *Id.* (emphasis added). An "inference" is defined as "[a] conclusion reached by considering other facts and deducing a *logical* consequence from them." *Inference*, Black's Law Dictionary 897 (10th ed. 2014) (emphasis added).

¶67. "The Mississippi Supreme Court has held that tortious interference with at-will

27

contracts of employment is a viable claim." *Watkins v. Oakes*, 318 So. 3d 1125, 1129 (¶13) (Miss. Ct. App. 2020) (citing *Levens v. Campbell*, 733 So. 2d 753, 760 (¶27) (Miss. 1999)). To recover on a claim for malicious or tortious interference, however, a plaintiff must establish by a preponderance of the evidence that

> (1) the [defendant's] acts were intentional and willful; (2) they were calculated to cause damage to the plaintiff in his lawful business; (3) they were done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant, which acts constitute malice; and (4) actual damage or loss resulted.

*Springer v. Ausbern Const. Co.*, 231 So. 3d 1065, 1068 (¶12) (Miss. Ct. App. 2016).

¶68. Focusing on the element of malice within a tortious interference claim, the supreme court has explained that "[a]n action for interference with contract generally will lie against one who maliciously interferes with a valid and enforceable contract, causing one party not to perform and resulting in injury to the other party." *Collins v. Collins*, 625 So. 2d 786, 790 (Miss. 1993). "In this context, 'malicious' is defined as the intentional doing of a harmful act without legal or sound justification or excuse, in other words, the willful violation of a known right." *Id.*

¶69. Also relevant in this case is that "one occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Morrison v. Miss. Enter. for Tech. Inc.*, 798 So. 2d 567, 574 (¶24) (Miss. Ct. App. 2001) (quoting *Shaw v. Burchfield*, 481 So. 2d 247, 255 (Miss. 1985)); *see Springer*, 231 So. 3d at 1069 (¶13).

28

¶70. Cowart was the owner and CEO of Brandi's Hope. As such, he held a position of responsibility with respect to Walters's employment, and "his actions were [therefore] privileged unless they were taken in bad faith." *Id.* In order to satisfy this "bad faith exception," a plaintiff must show that the defendant acted with malice, i.e., that the defendant terminated the plaintiff's employment "without right or good cause." *Id.* at 575 (¶29); *accord Cromwell v. Williams*, 333 So. 3d 877, 885 (¶17) (Miss. Ct. App. 2022). In this regard, "[i]t is not necessary for direct evidence to exist, such as an admission by the defendant that he acted in bad faith. Instead, such a conclusion generally arises as an inference from other evidence." *Id.* at 575 (¶26). "The conclusion . . . [however,] must be that the actor was malicious or recklessly disregarding the rights of the person injured." *Id.*

¶71. The circumstances in *Cromwell* are analogous to those in the case before us. In *Cromwell*, "William Cromwell, a certified registered nurse anesthetist . . . , was employed as an independent contractor with . . . [a hospital] when his contract was terminated." *Cromwell*, 333 So. 3d at 880 (¶1). "Cromwell subsequently sued Dr. Woodrow Brand III, the chief surgeon, and Nancy Williams, the operating-room manager, for tortious interference with his contract." *Id.* Dr. Brand and Williams had expressed concerns to the hospital administrator about Cromwell's "ability to provide quality anesthesia services" during surgery. *Id.* at 881 (¶3).

¶72. This Court affirmed the circuit court's grant of summary judgment in those defendants' favor, finding "that Dr. Brand and Williams are immune from tort liability

because they acted in the course and scope of their employment when relaying information to their hospital administrator, and there is no genuine issue of material fact as to whether either party was acting in bad faith." *Id.* at 880 (¶1).

¶73. In reaching this conclusion, this Court emphasized that reliance upon truthful information in making a termination decision does not support a finding of bad faith. *Id.* at 890 (¶26). We found that "an agent of a principal cannot be liable for tortious interference with a contract that the principal has with another when relaying truthful information during the course and scope of his or her agency." *Id.* We further observed that "it is legally impossible to act in bad faith when an employee provides 'truthful information' to his or her employer concerning the safety and health of patients being treated at the hospital owned by the employer." *Id.*

¶74. In this case, our review of the record reflects that in deciding to terminate Walters's employment, Cowart acted on "truthful information" he received from Keith and the information gathered in investigating John's injuries. Walters acknowledged during cross-examination that the private personal health information of the people she served and supported must be kept confidential. Walters further admitted that she shared John's patient information with an unauthorized person (Crump). Keith conveyed this truthful information to Cowart, and he testified that he relied on this truthful information to terminate Walters's employment on behalf of Brandi's Hope.

¶75. Specifically, Cowart testified that he terminated Walters's employment because she

circulated a photograph of a resident's injuries to a third person, in violation of the HIPAA privacy rule and company policy. Cowart testified about HIPAA and why he believed the photograph constituted protected personal health information under HIPAA. Further, Cowart testified that he did not decide to terminate Walters's employment until the weekend following the incident. Brandi's Hope had already reported the incident to the MDMH and the attorney general on Friday. Cowart testified that by the weekend following the incident,

> I was certain that she [Walters] allowed a former employee access to a picture that she should not have done. I was certain that she lied about it in a statement to me and said that she didn't and that was the deciding factor, because as of Friday, when the report [to MDMH and the attorney general] had already been done [by Brandi's Hope], the reporting of the assault or allegation of assault, that had nothing to do with it.

¶76. In contrast, other than her testimony that she received a letter from Cowart informing her of the termination, Walters gave no testimony about Cowart's actions. She actually testified that she "never had a conversation with him." Nevertheless, Walters asserts that *Cromwell* is not analogous because, according to Walters, the jury in this case "could reasonably find that Cowart's claim, that Walters was fired because of a HIPAA violation, was a blatant lie, and that the real reason was that Cowart did not want abuse of Brandi's Hope residents to be documented."

¶77. On this theme, Walters asserts that the jury was presented with "ample evidence from which [it] . . . could find that bad faith was established because Walters had made the allegation not just to anyone, but to Frankie Crump" because Cowart acknowledged during cross-examination that there were other charges of abuse that Crump had made against

31

Brandi's Hope. But the record reflects that by the Friday following the incident, Brandi's Hope itself had already reported the suspected abuse. Thus, as Cowart testified, it would not have mattered "if it was Frankie Crump or anybody else that was not privileged to [receive] that information, it wouldn't have made any difference." Further, Walters's argument is contradicted by Cowart's testimony that he did not know Crump sent John's photograph to the attorney general when he decided to terminate Walters's employment.

¶78. Walters also asserts that a jury could infer bad faith because Cowart caused Walters to be fired for reporting the information to her supervisor and site director, as required by Brandi's Hope's internal procedures. As addressed above, however, this argument ignores that the disclosure Walters made to *Crump* (a person who was not authorized to receive the disclosure) was the basis for Cowart's termination decision, as reflected in the record and throughout trial. The jury heard testimony from both Cowart and Keith that the reports to Texidora (Walters's supervisor) and Keith (the site manager) were not cited as a reason for Walters's discharge.

¶79. In a similar vein, Walters asserts that a jury could infer that Cowart acted in bad faith because when Attorney General Investigator Sanderson testified at trial, he praised Crump for reporting incidents of abuse to the Attorney General's office and because the photograph was helpful to prove a claim. But Sanderson also testified that the Attorney General's office received reports from both Brandi's Hope and Crump on the same day. And, in any event, Sanderson's testimony was elicited at trial—the record contains no evidence that these

32

opinions were known to Cowart when he terminated Walters's employment.[15]

¶80.    Walters also asserts that a jury could infer bad faith or malice on Cowart's part for his "frivolous reliance upon a HIPAA violation" or "the cell phone excuse" to purportedly "disguise the real reason for [her] discharge," which, according to Walters, was because she had reported the abuse to Crump.  In support, Walters references the trial judge's own "skeptical" observations about the HIPAA violation.

¶81.    Specifically, during the jury charge conference, the trial judge stated that he did not believe that the photograph of John was a protected health record under HIPAA.  But pursuant to 45 C.F.R. § 160.103, PHI is defined to include "individually identifiable health information . . . relat[ing] to the past, present, or future physical . . . condition of an individual." The information at issue here is a photograph of John's injured face that Walters took in the course and scope of her employment.  The trial judge also read a portion of the HIPAA regulations that indicate the regulations were not violated by reporting abuse.  To be sure, the HIPAA regulations allow for reports of abuse—but the way in which the reporting must take place is specifically delineated.  As addressed above, similar to the MVPA, HIPAA allows disclosure of a resident's protected personal health information only if the person or

---

[15] Walters also references Sanderson's testimony that when Cowart talked to him about the incident, Cowart "indicat[ed] that he felt like some of the employees were disgruntled and making allegations of things that were not true."  But when asked whether he knew who these "disgruntled employees" were, Sanderson could not remember.  We do not find this comment constitutes sufficient evidence to permit a jury to infer "bad faith" on Cowart's part in deciding to terminate Walters's employment.

entity is reporting the allegations to the appropriate government authorities, such as a social service or protective services agency, authorized by law to receive reports of such abuse or neglect. *See* 45 C.F.R. § 164.512(a)(c).

¶82. In short, the trial court's statements about HIPAA were inaccurate as a matter of law. Further, these statements were made outside the presence of the jury. We find that to assume a reasonable jury could infer malice on Cowart's part in terminating Walters's employment based upon similar faulty conclusions is far too speculative. We will not do so here. *See Jackson HMA LLC*, 130 So. 3d at 497 (¶11) (noting that in reviewing the denial of a directed verdict or JNOV, the appellate court must "view all *reasonable* inferences in the [nonmoving] party's favor" (emphasis added)); *see Inference*, Black's Law Dictionary 897 (10th ed. 2014) (defining "inference" as "[a] conclusion reached by considering other facts and deducing a *logical* consequence from them" (emphasis added)).

¶83. For all these reasons, we find that it was reversible error for the trial court to not enter judgment as a matter of law in favor of Cowart on Walters's malicious-interference-with-employment claim against him.

## CONCLUSION

¶84. In sum, we reverse the jury verdicts and judgment entered by the trial court and affirmed by the circuit court, and we render judgment in favor of Brandi's Hope on Walters's retaliatory discharge claim and in favor of Cowart on Walters's malicious-interference-with-employment claim. Our ruling renders moot all other issues raised by Brandi's Hope and

34

Cowart. *See Am. Bankers Ins. Co. of Fla. v. Booth*, 830 So. 2d 1205, 1214 (¶37) (Miss. 2002).

¶85. **REVERSED AND RENDERED.**

**BARNES, C.J., GREENLEE, LAWRENCE AND SMITH, JJ., CONCUR. McCARTY, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. WILSON, P.J., AND EMFINGER, J., DISSENT WITHOUT SEPARATE WRITTEN OPINION. McDONALD, J., DISSENTS WITH SEPARATE OPINION, JOINED BY WESTBROOKS, J.; WILSON, P.J., AND EMFINGER, J., JOIN IN PART.**

**McDONALD, J., DISSENTING:**

¶86. I dissent from the majority's holding that Brandi's Hope was not procedurally barred from arguing on appeal that the Mississippi Vulnerable Persons Act (MVPA)[16] supersedes *McArn*[17] and that the statute and HIPPA's reporting requirements preclude any recovery by Walters. To the contrary, the record shows that Brandi's Hope failed to make this argument at any point during the county court proceedings or to the circuit court on appeal and is procedurally barred from arguing this issue on appeal.

¶87. Brandi's Hope argues on appeal that Walters is precluded from recovering for retaliatory discharge because she failed to report John's abuse as required by the MVPA, which Brandi's Hope contends overrides *McArn*. However, "[i]t is well-settled that issues presented for the first time on appeal are procedurally barred from consideration." *Lewis v. Forest Fam. Prac. Clinic P.A.*, 124 So. 3d 654, 658 (¶16) (Miss. 2013). A review of the

---

[16] Mississippi Code Annotated sections 43-47-1 to -39 (Rev. 2021).

[17] *McArn v. Allied Bruce-Terminix Co.*, 626 So. 2d 603 (Miss. 1993).

record in this case establishes that Brandi's Hope failed to raise this argument to the courts below. Brandi's Hope did not plead Walters's failure to follow the MVPA as an affirmative defense in its answer. Brandi's Hope insisted during arguments on its motion for directed verdict that the action was a *McArn* action only, and Brandi's Hope actually withdrew its proposed jury instruction about the MVPA. Further, Brandi's Hope failed to raise the argument in its post-trial motion to the county court or in its appeal to the circuit court. Accordingly, Brandi's Hope is procedurally barred from arguing this issue on appeal to this Court.

### A.    Failure to Plead Violation of the MVPA as a Defense

¶88.    Walters filed her complaint for retaliatory discharge in "violation of public policy." The parties clearly understood, and Brandi's Hope agreed, that Walters brought her claim under the *McArn* doctrine, which protects employees from discharge if they report illegal activity by their employer or its agents. Brandi's Hope answered the complaint and raised several affirmative defenses, including but not limited to Walters's alleged failure to state a claim and failure to mitigate her damages. But Brandi's Hope did not affirmatively plead that Walters's *McArn* action was barred by her failure to follow the reporting requirements of the MVPA,[18] and this failure precluded any recovery under *McArn* as a matter of law.

---

[18] Mississippi Code Annotated section 43-47-37(1)-(2)(c) (Rev. 2015), states:

(1) Any person who, within the scope of his employment at a care facility as defined in Section 43-47-5(b), or in his professional or personal capacity, has knowledge of or reasonable cause to believe that any patient or resident of a

36

¶89.    Rule 8(c) of the Mississippi Rules of Civil Procedure requires that affirmative

defenses be specifically pleaded:

> In pleading to a preceding pleading, a party shall set forth affirmatively
> [specific defenses itemized] and any other matter constituting an avoidance or
> affirmative defense.

"This Court has interpreted this rule to mean that, generally, if a party fails to raise an

affirmative defense in its original answer, the defense will be deemed waived." *Pruitt ex rel.*

*Brooks v. Sargent*, 349 So. 3d 729, 731 (¶5) (Miss. 2022) (citing *Hutzel v. City of Jackson*,

33 So. 3d 1116, 1119 (¶12) (Miss. 2010)); *see also Pass Termite & Pest Control Inc. v.*

*Walker*, 904 So. 2d 1030, 1033-34 (¶¶9-10) (Miss. 2004) (holding that defendant had waived

the right to compel arbitration when the defendant failed to plead it as a defense).  Rule 12(b)

reiterates this requirement, stating, "Every defense, in law or fact, to a claim for relief in any

pleading, whether a claim, counter-claim, cross-claim, or third-party claim, shall be asserted

in the responsive pleading thereto if one is required[.]"  M.R.C.P. 12(b).  A party's failure

to specifically plead a defense constitutes a waiver of that claim.  *Allstate Ins. Co. v.*

---

care facility has been the victim of abuse, neglect or exploitation shall report
immediately the abuse, neglect or exploitation.

(2) The reporting of conduct as required by subsection (1) of this section shall
be made:

. . . .

(c) By all other care facilities, orally or telephonically, within
twenty-four (24) hours of discovery, excluding Saturdays, Sundays and
legal holidays, to the State Department of Health and the Medicaid
Fraud Control Unit of the Attorney General's office.

37

*Millsaps*, 296 So. 3d 163, 179 (¶67) (Miss. Ct. App. 2020). Accordingly, in failing to plead that Walters's claim was barred because the MVPA superseded *McArn*, Brandi's Hope waived this defense and is barred from arguing it on appeal.

¶90.    In an ironic twist, the majority asserts that we cannot consider Brandi's Hope's failure to plead the MVPA as an affirmative defense because Walters did not specifically argue that fact in her brief. *See ante* n. 9. However, the failure to plead the MVPA as an affirmative defense is not a separate *issue* on appeal; it is merely one of many facts from the record that supports Walters's overall argument, which the majority agrees was raised,[19] that Brandi's Hope did not argue to the courts below that the MVPA supersedes *McArn* and is procedurally barred from doing so now.

¶91.    Walters clearly raised the procedural-bar issue in her appellate brief in this court, stating:

> Appellants claim that the 'trial court erred in expanding the judicial *McArn* public policy exception for the 'reporting of illegal acts' where the Mississippi Vulnerable Adults Act ("MVAA") already provides statutory protection from employer retaliation, . . . .' Appellants then claim that the *McArn* Doctrine is limited by the MVAA because that statute does not list reporting to one's supervisor or reporting to the site manager as protected activity.

Here, Walters is pointing out that Brandi's Hope is trying to argue that the MVPA supersedes

[19] The majority states, "As an initial matter, Walters asserts that Brandi's Hope is barred from asserting on appeal that the trial court 'expanded' *McArn* and ignored the MVPA's limited anti-retaliation provision because Brandi's Hope did not raise this issue in the trial court." *See ante* ¶47. This is a clear acceptance that Walters did raise the *issue* of Brandi's Hope's failure to raise the MVPA's retaliatory discharge provision as superseding *McArn* to the trial court.

*McArn*. Walters goes on to assert that Brandi's Hope did not raise this point at trial:

> When moving for a directed verdict at the close of Walters' case, however, Appellants never claimed that Walters was seeking to expand *McArn* by utilizing the specific language of the MVAA. Instead, the argument at that time was that the MVAA could not be considered because it had not been pled.

Walters even gave examples from the record, pointing out that during the hearing on the motion for a directed verdict, Brandi's Hope solely discussed the MVPA in the context of defeating Walters's motion to amend her complaint to add the MVPA as an additional claim. Walters then argued this procedural-bar issue by citing *Boyles v. Mississippi State Oil & Gas Board*, 794 So. 2d 149, 153 (¶10) (Miss. 2001), which states, "It is a well-settled proposition that this Court will not review matters on appeal that were not considered by the lower court." Further, Walters cited *Anderson v. LaVere*, 136 So. 3d 404, 410-11 (¶31) (Miss. 2014), stating it is "longstanding caselaw, that [parties] are barred from raising this argument for the first time on appeal."

¶92.    Walters repeatedly raised the issue of the procedural bar surrounding Brandi's Hope's claim that the MVPA supersedes *McArn*. Walters argued the issue by pointing to instances in the record, as well as citing authority, supporting her argument on appeal that this new defense is procedurally barred. Walters may not have cited every instance in the record that supports her procedural-bar issue, but this does not preclude us from considering other instances in the record that support the procedural bar. The majority's assertion that Walters has waived this defense contradicts to its own opinion, as well as the clearly briefed

39

arguments of the appellee and the record.[20]

¶93. In the alternative, the majority argues that Brandi's Hope adequately pled Walters's violation of the MVPA barred any recovery when Brandi's Hope pled in its fifth affirmative defense that Walters's "allegations do not implicate any exceptions to Mississippi's employment at will doctrine and [Walters's] wrongful termination claim is barred." But from the wording of this defense, Brandi's Hope was actually pleading that Mississippi's employment-at-will doctrine precluded any recovery by Walters and that her allegations raised no exception to the doctrine. This is hardly the same as pleading with specificity that Walters had failed to report the abuse to specific agencies pursuant to the MVPA as Brandi's Hope now argues.

> A defendant must plead an affirmative defense with enough specificity or factual particularity to give the plaintiff "fair notice" of the defense that is being advanced. The concern is that a defendant should not be permitted to

---

[20] The majority suggests that the failure to raise MVPA as an affirmative defense is an issue on appeal that Walters did not raise, i.e., that we are "doing the work for a party" which is prohibited under *Okhuysen v. City of Starkville*, 333 So. 3d 573, 585 (¶33) (Miss. Ct. App. 2022). But that case is not applicable to the facts in this case. In *Okhuysen*, the plaintiff argued that the city's inspector had illegally trespassed onto his property and taken pictures in violation of Okhuysen's constitutional right to be free of illegal searches and seizures. *Id*. at 576 (¶1). The circuit court found for the city, and on appeal, we held that Okhuysen's constitutional claim had merit. *Id*. at 573 (¶32). The *Okhuysen* dissent raised other issues, i.e. that photographs should not be excluded because the items that were pictured were in plain view, and that the city acted in good faith. *Id*. at 594 (¶¶61-62). But the *Okhuysen* majority pointed out that the city never raised these issues on appeal. *Id*. at 585, 590 (¶¶33, 46). In the case before us, however, we are not fashioning a new issue that was not raised. Walters did raise the issue that because Brandi's Hope failed to argue the MVPA's preclusion of recovery to the courts below, it was a procedural bar from raising it now. We are merely examining the record to determine if Walters is correct in her argument.

"lie behind a log" and ambush a plaintiff with an unexpected defense.

*Rogers*, 521 F.3d 381, 385 (5th Cir. 2008) (internal quotation marks omitted).[21]

B.      *Directed Verdict*

¶94.    After Walters presented her case and rested, Brandi's Hope moved for a directed verdict.  Significantly, it was Walters, not Brandi's Hope, who brought up the MVPA. During oral argument, Walters suggested that the MVPA's provision for retaliatory discharge was an additional ground for protecting Walters's disclosure.  When Walters mentioned this ground, Brandi's Hope pointed out that the MVPA retaliatory discharge would be a separate cause of action from the *McArn* claim that Walters had originally pled.  Walters orally requested to amend her complaint to add the MVPA retaliatory discharge claim, and Brandi's Hope opposed allowing the amendment based on the ground that Walters could not satisfy the requirements of the MVPA retaliatory discharge provision.  The judge took Walters's motion to amend under advisement and denied Brandi's Hope's motion for a directed verdict.

¶95.    Later, after Brandi's Hope presented its case, it renewed its motion for a directed verdict.  In that argument, the parties again debated whether or not Walters could now assert an MVPA retaliatory discharge claim.  Brandi's Hope's argument reflected that it understood that Walters had two distinct causes of action for retaliatory discharge: (1) under the *McArn*

---

[21] Nor did Brandi's Hope adequately plead the MVPA defense in its affirmative defense that Walters had "failed to state a claim for relief."  Such a general statement is insufficient to assert a specific affirmative defense.  *See Loggers LLC v. 1 Up Techs LLC*, 50 So. 3d 992, 994 (¶11) (Miss. 2011).

doctrine and (2) under the MVPA retaliatory discharge provision. Brandi's Hope argued that Walters could not raise the MVPA retaliatory discharge provision because she did not plead it and that she would most likely not recover because she had not reported the abuse to the two specific agencies identified in the statute. Brandi's Hope did, however, recognize that the *McArn* claim was pled, at numerous points saying this is "just a *McArn* claim," and acknowledging that *McArn* was a viable avenue for recovery. Brandi's Hope never argued during either of its motions for a directed verdict that Walters had no retaliatory discharge claim at all based on the theory that the MVPA superseded the *McArn* doctrine. After hearing the parties, the county court judge denied both the motion for a directed verdict and the motion to amend. Thereafter neither party argued the MVPA retaliatory discharge provision or the MVPA reporting requirements as a theory of the case, as either a claim or an affirmative defense.

¶96. The majority mistakenly asserts that the county court made a definitive ruling that "the MVPA basically codified *McArn*," and, thus, the issue of whether MVPA superseded *McArn* for healthcare employees is legitimately before this Court. *See ante* ¶51. But the statement that the majority quotes as the ruling of the court came after the actual ruling on the motions and when the court was addressing a different subject. The county court's oral ruling on the motion for a directed verdict and motion to amend follows:

> The Court: All right. The post-trial motion is going to be denied, the post-trial motion or motions, however, you want to frame it, but those will be denied.

42

Thereafter, the parties discussed the issue of punitive damages and then, at page 603, the court brought up whether the MVPA created a separate cause of action in the context of jury instructions:

> The Court: Now, on the jury instructions when we get there, this issue about this statute, it appears that the statute -- you know, there's a question: Does that create a statutory private cause of action? It provides that nobody can be retaliated against in employment decisions, demoted, fired, and so forth, based on reporting. And does that create – it basically is the same thing as the common law or a case created cause of action. *McArn*, is that the name for it?
>
> Walters: *McArn.*

Walters's counsel then discussed how the *DeCarlo* case as well as a Fifth Circuit decision expanded *McArn*. At that point, Brandi's Hope's attorney interjected, reiterating again that the case was not based on the MVPA:

> Brandi's Hope: I think you are trying to create something new. I think it's just the *McArn* case.
>
> The Court: I think that statute just, basically, codifies the *McArn* case is what it sounds like. *McArn* even goes further than the statute, but that's not germane to the issue in this trial. It's strictly a retaliatory discharge on the basis of reporting illegal or unlawful activity. All right. Well, post-trial motions are denied. I guess we're ready to go on jury instructions now.

These exchanges clearly show that the county court made no definitive ruling that the MVPA superseded *McArn* in the healthcare context. The county court merely queried whether the MVPA created a private cause of action and ultimately decided that the statute "*was not*

43

*germane to the issue in this trial.*"[22] (Emphasis added).

### C. Failure to Instruct the Jury on the MVPA or Reporting Requirements

¶97. After the motions were denied, the court heard arguments during the jury instruction conference. During these discussions, Brandi's Hope actually withdrew the jury instruction it had proposed on the MVPA reporting requirement (D-13). This instruction read:

> Under the Mississippi Vulnerable Persons Act, any person acting within the scope of her employment at Brandi's Hope, or in her professional or personal capacity, who has knowledge of or reasonable cause to believe a resident has been the victim of abuse or neglect shall immediately report the abuse and/or neglect to the Department of Human Services and the Medicaid Fraud Unit of the Attorney General's office.

Brandi's Hope said it withdrew the instruction because the parties had agreed on its other proposed instruction (D-7) on HIPAA.[23] In other words, Brandi's Hope was traveling on the

---

[22] We also note that MVPA could not have "codified" *McArn* because the retaliatory discharge provisions in MVPA were in effect in 1990, three years *before* the Supreme Court's 1993 decision in *McArn*. Further, since *McArn*, the Legislature has not amended the provision of the MVPA dealing with retaliatory discharge to curtail *McArn*. It is well-settled law that, where the legislature "amended or reenacted the statute without correcting [a] prior interpretation[,] [i]n our view, such action on the part of the legislature amounts to incorporation of our previous interpretation into the reenacted or amended statute." *Caves v. Yarbrough*, 991 So. 2d 142, 153-54 (¶43) (Miss. 2008).

[23] Instruction D-7 stated:

HIPPA is a federal statute enacted to protect the privacy and security of certain health information. The HIPAA Privacy Rule protects and limits the use and disclosure of protected health information, whether in electronic, paper, or oral form which includes past, present, and future physical or mental health or conditions. Brandi's Hope contends it is subject to HIPAA and that Plaintiff violated HIPAA. HIPPA permits disclosure of protected health information about an individual whom the covered entity reasonably believes to be a victim of abuse.

44

sole defense that Walters was rightfully terminated for disclosing patient information in violation of HIPPA.[24] Brandi's Hope was not arguing that Walters had no *McArn* claim because she failed to report the abuse under the MVPA or to the specific agencies identified therein. In summary, with D-13 withdrawn, there were no instructions charging the jury on any provisions of the MVPA and the jury was only to consider the retaliatory discharge claim under *McArn*, with HIPAA's general prohibition of disclosure of patient information being Brandi's Hope's only affirmative defense.

¶98. In addition, although several of the instructions obliquely refer to "unauthorized persons," nowhere is this term defined for the jury. Certainly, this Court cannot make a finding regarding who is and who is not an "authorized person," as does the majority.[25] Even if this were a question for the jury, we cannot find error with a jury verdict when they were not properly instructed on the issue at hand.

¶99. Under Rule 51(b) of the Mississippi Rules of Civil Procedure, each side in the

---

[24] Notably, Brandi's Hope did not argue that Walters had failed to report the abuse to any specific agency required by HIPPA. Perhaps it did not because unlike the MVPA, HIPPA does not identify any agency by name, but only says:

> a covered entity may disclose protected health information about an individual whom the covered entity reasonably believes to be a victim of abuse, neglect, or domestic violence to *a government authority, including a social service or protective services agency, authorized by law to receive reports of such abuse, neglect, or domestic violence. . . .*

45 C.F.R. § 164.512(c) (emphasis added).

[25] *See ante* ¶61.

litigation is to submit instructions on the substantive law of the case. Under Rule 51(b)(3) any objection to an instruction must be stated into the record. A party has an obligation to prepare and submit jury instructions. "A trial court is not obligated to instruct the jury sua sponte, nor is a court required to suggest instructions in addition to those which the parties tender." *Davis v. Davis*, No. 2020-CA-01304-SCT, 2023 WL 2533266, at *5 (¶22) (Miss. Mar. 16, 2023). In that case, a party withdrew his instruction on damages, and the Supreme Court stated, "John's failure to request damages instructions does not warrant that he get a second bite at the apple. Indeed, a failure to request an instruction generally bars or waives any corrections on appeal." *Id.* Similarly, in this case, Brandi's Hope withdrew its instruction on the MVPA, precluding the jury from considering it and its effect on Walters's *McArn* action, and Brandi's Hope is now barred from arguing it on appeal.

### D. Failure to Argue the MVPA in its JNOV Motion

¶100. After the jury returned a verdict in favor of Walters, Brandi's Hope filed a JNOV motion, arguing the jury's verdict should be vacated because Walters's disclosure of information to Crump was not a "report" of illegal activity that is protected by *McArn*. Brandi's Hope was now asking the county court to define the word "report" to mean a disclosure to a specific agency listed in the MVPA. But Brandi's Hope had ample opportunity to prepare and present a jury instruction about the definition of a "report" and failed to do so. Consequently, Brandi's Hope was barred from raising the issue after the verdict. A trial court cannot enter a JNOV based on law that the jury was not charged on.

46

In *Materials Transportation Company v. Newman*, 656 So. 2d 1199, 1202 (Miss. 1995), Materials relied only on an "open and obvious danger" defense to Newman's claims for damages sustained when he was changing a battery on one of Materials's forklifts. When Materials then argued in its JNOV motion that Newman was barred from recovery because of his assumption of the risk, the Mississippi Supreme Court pointed out that Materials had not submitted an instruction to the jury on this issue. *Id*. at 1203. The Court noted that the one instruction that partly addressed the issue failed to include all the elements of assumption of risk. *Id*. at n.2. The Court concluded that Materials was therefore barred from raising the issue after the verdict. *Id*. Similarly, in this case, Brandi's Hope submitted no instruction that defined what a "report" was or that it was limited to disclosures to certain agencies. Therefore, Brandi's Hope is barred from arguing that issue on appeal.

¶101. More importantly, Brandi's Hope did not raise in its JNOV motion to the county court the argument that it now raises on appeal, i.e., that the MVPA reporting requirements totally supersede *McArn* and basically eliminate any *McArn* action for employees reporting abuse of vulnerable adults. Consequently, Brandi's Hope is barred from arguing that issue on appeal now.

> E.    *Circuit Court Appeal*

¶102. After the verdicts and final judgment by the county court, Brandi's Hope appealed to the Lee County Circuit Court and made the same argument that Brandi's Hope made in its JNOV motion, namely that a "report" of abuse is only a disclosure to the specifically named

47

MVPA agencies. Brandi's Hope failed to present to the circuit court any argument regarding the MVPA totally modifying and supplanting *McArn* in cases such as Walters. The circuit court affirmed the county court judgment.

## F. Court of Appeals

¶103. Before this Court, Brandi's Hope raises for the first time that an employee at a healthcare facility has no cause of action for retaliatory termination under *McArn* unless that employee reported the abuse to either of the two agencies listed in the MVPA.

¶104. As noted earlier, a party is procedurally barred from arguing on appeal an issue not raised to the courts below. The Mississippi Supreme Court has long held that "an issue not raised before the lower court is deemed waived and is procedurally barred." *Pub. Emps.' Ret. Sys. v. Freeman*, 868 So. 2d 327, 330 (¶9) (Miss. 2004) (ruling a party was procedurally barred from raising the issue of interest on his disability benefits payments on appeal when he failed to raise the issue in the proceedings before PERS and the court below). Further, the Court has held that "it is axiomatic that 'the trial judge cannot be put in error on a matter which was not presented to him for decision.'" *Gordon v. Wall* (*In re Will of Waller*), 273 So. 3d 717, 721 (¶16) (Miss. 2019) (quoting *Brown v. Miss. Transp. Comm'n*, 749 So. 2d 948, 954 (¶11) (Miss. 1999)). It is "[o]ne of the most fundamental and long established rules of law in Mississippi [that] an appellate court will not review matters on appeal that were not raised at the trial court level." *Leverett v. Leverett*, 309 So. 3d 116, 121-22 (¶19) (Miss. Ct. App. 2020) (failing to raise the offsetting of a personal obligation to the chancellor barred

husband from raising the issue on appeal). In *Allgood v. Allgood*, 473 So. 2d 416, 423 (Miss. 1985), where a wife failed to plead the defense of laches, the Mississippi Supreme Court stated that "[a]s a prerequisite to obtaining review in this Court, it is incumbent upon a litigant that he not only plead but press his point in the trial court."

¶105. In the present case, Brandi's Hope did not raise the MVPA preclusion as an affirmative defense and opposed Walters's motion to amend the complaint to include an MVPA retaliatory discharge claim. Brandi's Hope repeatedly asserted that the only issue tried was the *McArn* claim and that Brandi's Hope's defense was Walters's violation of HIPPA's disclosure of patient information to Crump. Brandi's Hope voluntarily withdrew its proposed jury instruction on the MVPA reporting requirements, thus waiving the issue for appeal. Brandi's Hope never offered an instruction that defined who was and was not an authorized person under the MVPA or HIPAA. Brandi's Hope never raised the argument that the MVPA reporting requirements supersede *McArn* in its JNOV motion or before the circuit court on appeal. Based on Brandi's Hope's continuous failure to raise this issue to the county court and on appeal to the circuit court, Brandi's Hope is procedurally barred from arguing that the MVPA's retaliatory discharge and reporting requirements supersede or preclude Walters's *McArn* claim. For the above reasons, I dissent and would affirm the jury's verdicts in this case.

**WESTBROOKS, J., JOINS THIS OPINION. WILSON, P.J., AND EMFINGER, J., JOIN THIS OPINION IN PART.**

49